UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANNON TAYLOR, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>TRUSTED MEDIA BRANDS, INC.,<br><br>                Defendant. | Case No.  7:16-cv-01812-KMK<br><br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW OF DEFENDANT TRUSTED MEDIA BRANDS, INC. <u>IN SUPPORT OF ITS MOTION TO DISMISS</u>

Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
sandra.hauser@dentons.com

Natalie J. Spears, *pro hac vice*
Kristen C. Rodriguez, *pro hac vice*
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel:  (312) 876-8000
Fax:  (312) 876-7934
natalie.spears@dentons.com
kristen.rodriguez@dentons.com

*Counsel for Defendant*
*Trusted Media Brands, Inc.*

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS ......................................................................................... 3

      A.    The Michigan VRPA ................................................................................. 3
      B.    The Michigan Legislature's Recent  "Curative and Clarifying" Act .................... 4
      C.    Plaintiff's Copycat, No-Injury Lawsuit ............................................................ 5
      D.    Plaintiff's Claims For VRPA Statutory Damages Were Never Allowed On A
            Class Basis Under Michigan Law ........................................................................ 5

ARGUMENT ............................................................................................................ 6

I.      Standard Of Review ........................................................................................ 6

II.     Plaintiff Lacks Standing To Bring This No-Injury Action .................................. 7

      A.    *Spokeo* Confirms That Plaintiff Cannot Establish Article III Injury-In-Fact ........ 7
      B.    Even If Congress Could Confer Article III Standing Based On A Bare Statutory
            Violation, A State Legislature Cannot ................................................................ 9
      C.    The Michigan Legislature Has Made Clear That It Did Not Intend To Create A
            No-Injury Civil Action—Actual Damages Are Required .................................... 11

         1.    The Michigan Legislature Intended The Actual Damages Requirement To
                Apply Retroactively ................................................................................. 12
         2.    The Amendment is Remedial And Does Not Impair Vested Rights ............. 15

      D.    Plaintiff's Conclusory And Implausible Allegations Do Not Establish Injury ..... 17

III.    As A Prudential Matter Of Comity And Federalism, The Court Should Decline To Assert
       Jurisdiction Over Plaintiff's Class Action That Subverts Michigan Law ........................ 19

IV.    Plaintiff Fails To State A Claim Because Trusted Media Provided Written Notice Her
       Information Could Be Disclosed For Marketing Purposes, As The VRPA Allows ......... 20

V.     The VRPA Violates The First Amendment .................................................... 22

VI.    Plaintiff's Tag-Along Unjust Enrichment Claim Fails As A Matter of Law ................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Faulhaber*,
   157 Mich. App. 164 (1987)...................................................................13

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)............................................................7, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................7, 9, 18

*Austin-Spearman v. AMC Network Entm't, LLC*,
   No. 14-CV-6840, 2015 WL 1539052 (S.D.N.Y. Apr. 7, 2015) ............................10

*Bailey v. Clark*,
   88 U.S. 284 (1874)..........................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................7, 18

*Boelter v. Advanced Magazine Publ.*,
   No. 15-CV-5671 (S.D.N.Y.)....................................................................1

*Boelter v. Hearst Comm'cns, Inc.*,
   No. 15-cv-03934 (S.D.N.Y.).......................................................... *passim*

*Bonilla v. Lafler*,
   No. 06-15466, 2009 WL 2386080 (E.D. Mich. July 30, 2009) ...............................11

*Bose v. Interclick, Inc.*,
   No. 10 Civ. 9183 (DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) .............................18

*Brown v. Entm't Merchs. Ass'n*,
   131 S. Ct. 2729 (2011)......................................................................24

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943)..........................................................................20

*Cain v. Redbox Automated Retail, LLC*,
   981 F.Supp.2d 674 (E.D. Mich. 2013)..........................................................14

*Carlsen v. Gamestop, Inc.*,
   112 F.Supp.3d 855, 861 *D ...................................................................18

*In re Certified Questions*,
   416 Mich. 558 (1982) ...................................................................................................16, 17

*City of Detroit v. Walker*,
   445 Mich. 682 (1994) ..........................................................................................................16

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
   No. 12 Civ. 0722 (PAE), 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) .................................6

*Coulter-Owens v. Time, Inc.*,
   2016 WL 612690 (E.D. Mich. Feb. 16, 2016) .......................................................................14

*Detroit Edison Co. v. Janosz*,
   350 Mich. 606 (1957) ..........................................................................................................13

*Detroit Edison Co. v. State*,
   320 Mich. 506 (1948) ..........................................................................................................14

*Doe v. Chao*,
   540 U.S. 614 (2004) ............................................................................................................17

*Frank W. Lynch & Co. v. Flex Technologies, Inc.*,
   463 Mich. 578 (2001) ..........................................................................................................12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015)...................................................................................................8

*Gordon v. Crouchley*,
   554 F. Supp. 796 (D.R.I. 1982)............................................................................................20

*Greater New Orleans Broad. Ass'n, Inc. v. U.S.*,
   527 U.S. 173 (1999).............................................................................................................24

*Halaburda v. Bauer Publ'g Co., LP*,
   No. 1:12-cv-14221, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013)..............................1, 11, 14

*Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013).........................................................................................................11

*Jackson v. PKM Corp.*,
   430 Mich. 262 (1988) ..........................................................................................................25

*In re JetBlue Airways Corp. Privacy Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................................................18

*Kelly Servs., Inc. v. Treas. Dept.*,
   296 Mich. App. 306 (2012)...................................................................................................13

*Kinder v. Meredith Corp.*,
    2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) ...............................................................14, 17

*Kraft v. Detroit Ent'mnt, L.L.C.*,
    261 Mich. App. 534 (2004)................................................................................................24

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)..............................................................................................22

*Lahti v. Fosterling*,
    357 Mich. 578 (1959) .......................................................................................................16

*Levin v. Commerce Energy, Inc.*,
    560 U.S. 413 (2010)....................................................................................................19, 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...........................................................................................................7

*Malcolm v. City of East Detroit*,
    437 Mich. 132 (1991) .........................................................................................................6

*Mangini v. R.J. Reynolds Tobacco Co.*,
    793 F. Supp. 925 (N.D. Cal. 1992) ..................................................................................10

*In re MBIA, Inc., Securities Litig.*,
    700 F.Supp.2d 566 (S.D.N.Y. 2010) (Karas, J.) ..............................................................21

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974)..........................................................................................................23

*N.L.R.B. v. Bell Aerospace Co.*,
    416 U.S. 267 (1974)..........................................................................................................14

*In re Nickelodeon Consumer Privacy Litig.*,
    No. 15-1441 (3d Cir. June 27, 2016) .................................................................................8

*In re Oswalt*,
    444 F.3d 524 (6th Cir. 2006) ......................................................................................13, 14

*Pacheco v. Boar's Head Provisions Co.*,
    No. 1:09-CV-298, 2010 WL 1323785 (W.D. Mich. Mar. 30, 2010)....................................25

*People v. Jackson*,
    465 Mich. 390 (2001) .......................................................................................................16

*People v. Peltola*,
    489 Mich. 174 (2011) .......................................................................................................15

*People v. Sheeks*,
    244 Mich. App. 584 (2001)..................................................................................13

*Prod. Credit Ass'n of Lansing v. Dep't of Treas.*,
    404 Mich. 301 (1978) .........................................................................................13

*Public Citizen v. Dep't of Justice*,
    491 U.S. 440 (1989)............................................................................................20

*Red Lion Broadcasting Co. v. F.C.C.*,
    395 U.S. 367 (1969).............................................................................................14

*Reed v. Town of Gilbert, Ariz.*,
    135 S. Ct. 2218 (2015)........................................................................................22

*Retail Digital Network, LLC v. Appelsmith*,
    810 F.3d 638 (9th Cir. 2016) ..............................................................................23

*Robainas v. Metropolitan Life Ins. Co.*,
    1:14-cv-09926-DLC, 2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) ......................10

*Romein v. Gen. Motors Corp.*,
    168 Mich. App. 444 (1988), *aff'd*, 436 Mich. 515 (1990) ....................................12

*Rookledge v. Garwood*,
    340 Mich. 444 (1954) .........................................................................................16

*Ross v. AXA Equitable Life Ins. Co.*,
    115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015)..........................................................10

*Ross v. Bank of Am., N.A. (USA)*,
    524 F.3d 217 (2d Cir. 2008)...........................................................................7, 10

*Seaton v. Wayne Cty. Prosecutor*,
    233 Mich. App. 313 (1998)............................................................................13, 16

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) (Ginsberg, J., dissenting).....................................................20

*Silha v. ACT Inc.*,
    807 F.3d 169 (7th Cir. 2015) ..............................................................................18

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)..............................................................................................18

*Sira v. Morton*,
    380 F.3d 57 (2d Cir. 2004)..................................................................................21

*Sorrell v. IMS Health*,
   131 S. Ct. 2653 (2011) ..................................................................................22, 23, 24

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016) ................................................................................... *passim*

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002) ..................................................................................................24

*Thornhill v. Alabama*,
   310 U.S. 88 (1940) ...................................................................................................23

*LaPierre ex rel. Town of Yorktown v. DiBartolo*,
   No. 12-CV-1996 (ER), 2013 WL 656313 (S.D.N.Y. Feb. 21, 2013) .....................11

*In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*,
   92 F. Supp. 3d 163 (S.D.N.Y. 2015) .......................................................................21

*U.S. v. Caronia*,
   703 F. 3d 149 (2d Cir. 2012) ..............................................................................22, 23

*Va. State Bd. of Pharmacy v. Va. Citizens Cons. Council*,
   425 U.S. 748 (1976) ..................................................................................................22

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................................7, 12, 19

*In re Whole Foods Market Grp., Inc. Overcharging Litig.*,
   No. 15 Civ. 5838 (PAE), --- F.Supp.3d ---, 2016 WL 852796 (S.D.N.Y. Mar.
   1, 2016) .................................................................................................................7, 18

*Williams-Yulee v. Fla. Bar*,
   135 S. Ct. 1656 (2015) ..............................................................................................22

*Wilson v. Kellogg Co.*,
   111 F. Supp. 3d 306, 312 (E.D.N.Y. 2015), *aff'd*, 628 F. App'x 59 (2d Cir.
   2016) .........................................................................................................................22

## Statutes

18 U.S.C. § 2710 ...............................................................................................................3

M.C.L. § 445.322(2) .........................................................................................................6

M.C.L. § 445.815(2) .........................................................................................................6

M.C.L. § 445.1711 ...........................................................................................................3

M.C.L. § 445.1712 ........................................................................................................1, 4

M.C.L. § 445.1713(d) ...............................................................................................4, 19, 21

M.C.L. § 445.1715 ...............................................................................................................4, 6

Pub. Acts No. 206, § 5, 1989 Mich. Legis. Serv. 206 ...................................................4

Pub. L. No. 109-2, §§ 2, 4, 5.............................................................................................20

**Other Authorities**

Rule 3.501 ...............................................................................................................................6

Rule 3.501(A)(5).....................................................................................................................6

S. Rep. No. 100-599 (1988)................................................................................................3

The Michigan Video Rental Privacy Act ("VRPA") was passed in 1988 in the wake of a federal statute, the "Video Privacy Protection Act," prompted by concerns about the public disclosure of video rental records (namely, a newspaper article that revealed Supreme Court nominee Judge Robert Bork's video rental choices). Michigan's law is much broader than the federal Act. Despite its name, in addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of a wide swath of First Amendment-protected speech "concerning the purchase, lease, rental, or borrowing of those materials." M.C.L. § 445.1712. This dubious state statute sat on the books for nearly 30 years until an enterprising group of plaintiffs' lawyers dusted it off a few years ago, bringing a series of VRPA class action suits against magazine publishers, seeking massive statutory damages.

In this copycat suit, Plaintiff purports to bring a federal class action in New York on behalf of a putative class of Michigan magazine subscribers for an alleged bare procedural statutory violation of the VRPA that caused Plaintiff no injury or actual damages. This lawsuit should not be in court, much less federal court. Not only is the conduct alleged by Plaintiff not actionable under the statute—which explicitly allows precisely the kind of marketing "disclosures" of which Plaintiff complains—but as a fundamental, threshold matter, following the Supreme Court's recent decision in *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016), and the Michigan Legislature's recent clarifying and curative amendments to the VRPA, Plaintiff lacks both constitutional and statutory standing.[1] Plaintiff brought this suit prior to both the *Spokeo*

---

[1] In one other case pending in this District, *Boelter v. Hearst Comm'cns, Inc.*, No. 15-cv-03934 (S.D.N.Y.) ("*Hearst*"), Judge Torres recently issued a decision denying defendant Hearst's motion to dismiss. As raised with the Court at the June 22, 2016 conference and as noted in Trusted Media's letter of June 20, 2016 (Doc. 22), the *Hearst* decision was wrongly decided and will be discussed as pertinent below. The instant motion also raises different arguments than addressed in motion practice in prior lawsuits filed in the Eastern District of Michigan, *see, e.g., Halaburda v. Bauer Publ'g Co., LP*, No. 1:12-cv-14221, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013)—in particular the impact of the *Spokeo* decision and the legislative amendments, each of which would have dictated a different result in those cases. Plaintiff's counsel have filed other copycat actions in this District, including *Boelter v. Advanced Magazine Publ.*, No. 15-CV-5671 (Buchwald, J.), which are pending as of the date of this Motion.

1

ruling and the Michigan Legislature's amendment, and was counting on not having to show actual damages to punch her ticket into federal court under the VRPA.  Plaintiff was wrong.

First, *Spokeo* clarifies that alleging a "bare procedural violation" of a statute does not constitute injury in fact; rather, "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S.Ct. at 1549.   Plaintiff here does not allege that she suffered any cognizable concrete harm from the alleged, truthful "disclosure" for marketing purposes that she subscribed to Trusted Media's *Reader's Digest* magazine.  Nor does she even plead the particular kind of potential harm to reputation or emotional distress that the VRPA was intended to address, as is clear from the Act's express language and legislative history.  This case is more than a far cry from the Judge Bork incident of giving publicity to his video rental history in a newspaper. Following the Supreme Court's purposeful guidance in *Spokeo*, Plaintiff flunks the Article III standing test and her Complaint must be dismissed.

Second, Plaintiff also lacks standing under the VRPA itself, which requires actual damages.  The Michigan Legislature recently -- and quite purposefully -- amended the statute to eliminate statutory damages and to expressly confirm its intent that *actual damages* were *always* required in order to bring a civil action under the statute.  The Michigan Legislature never intended to allow a no-injury action, as Plaintiff presumed.  It deliberately amended the statute to both *clarify* and *cure* the abuse of actions just like this one, about which they heard testimony. This context is critical: the Legislature acted on a statute that had been sitting dormant for decades, and did so in a manner that did not create any new obligations on the parties but that put an immediate end to the something-for-nothing windfall Plaintiff was seeking to reap here.

Relatedly, this action batters the intent of the Michigan legislature in yet another respect. This suit was filed in federal court only because this Michigan Plaintiff knew she was categorically

banned by Michigan law from bringing these Michigan state law claims in Michigan state court on a class basis. Her counsel seeks to exploit what they see as a federal jurisdiction "loophole"—a strategy this Court can and should reject under principles of comity and prudential standing.

Finally, even if Plaintiff could establish standing and jurisdiction, the Complaint should be dismissed because Plaintiff cannot state a cause of action. Plaintiff contends the magazine industry's decades-old practice of making subscriber lists available for direct marketing—the only sort of "disclosures" alleged in the Complaint—violates the VRPA. However, in clear recognition of this common business practice, the VRPA explicitly permits disclosures made for marketing purposes, so long as notice is provided—as it was here. Plaintiff cannot artfully ignore the notices contained in the very magazines at issue, which are integral to and incorporated into the Complaint. Further still, even beyond Plaintiff's failure to state a claim, the VRPA itself cannot withstand constitutional scrutiny under the First Amendment. And Plaintiff's last-ditch unjust enrichment count is nothing more than a tag-along claim that is preempted by the VRPA and fails to state a claim.

Dismissal is in order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## STATEMENT OF FACTS

### A.    The Michigan VRPA

In 1987, the video rental history of Supreme Court nominee Judge Robert Bork was published in a newspaper (S. Rep. No. 100-599, at 5 (1988)). In response, Congress enacted, in November 1988, the Video Privacy Protection Act, prohibiting the disclosure of video rental records. 18 U.S.C. § 2710. Soon thereafter the Michigan Legislature passed its own, far broader version of the federal law, the "Video Rental Privacy Act" or "VRPA." M.C.L. § 445.1711, *et seq.* The VRPA, as originally enacted, provided:

> a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to

> any person, other than the customer, a record or information
> concerning the purchase, lease, rental, or borrowing of those
> materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

The VRPA included an express exception that permitted disclosures "for the exclusive purpose of marketing goods and services," if "written notice that the customer may remove his or her name at any time" is provided to the customer by the disclosing party. M.C.L. § 445.1713(d).

The Michigan Legislature passed the VRPA in 1988 as a criminal statute without any private right of action. A year later the statute was amended to add a civil remedy provision permitting individual "customers" who were damaged to bring an action for the greater of actual or $5,000 in statutory damages. M.C.L. § 445.1715; Pub. Acts No. 206, § 5, 1989 Mich. Legis. Serv. 206. For 25 years, the VRPA sat dormant. That changed a few years ago, when a string of purported class actions were filed by a single plaintiff's firm against magazine publishers.

**B.     The Michigan Legislature's Recent  "Curative and Clarifying" Act**

In response to these actions, on May 2, 2016, Governor Snyder signed an Act amending the VRPA (the "Act," attached to the Hauser Declaration as Ex. 2). Among other things, § 5 of the Act (dealing with the "civil action for damages") amends the statute to remove the provision for $5,000 statutory damages and instead provides that a customer "who suffers actual damages as a result of a violation of this act may bring a civil action" and may recover actual damages and reasonable costs and attorney fees. The Legislature expressly declared its intent:

> This amendatory act is *curative and intended to clarify* that the prohibitions on disclosing information contained in 1988 PA 378, MCL 445.1711 to 445.1715, do not prohibit disclosing information if it is incident to the ordinary course of business of the person disclosing the information, including marketing goods and services to customers or potential customers when written notice is provided, and *that a civil action for a violation of those prohibitions may only be brought by a customer who has suffered actual damages as a result of the violation*.

4

(Hauser Decl., Ex. 2, Enacting Provisions, § 2 (emphasis added).)  Immediately below the quoted curative and clarifying language, the Act states: "This act is ordered to take immediate effect."

As discussed further below, the Amendment was enacted in direct response to several purported class actions under the VRPA which were premised exclusively on the statutory damages remedy without any alleged harm, and amid controversy over whether the Act required "actual damages" to bring an action.  The Legislature has thus irrefutably "cured" what it perceived as misapplication and abuse of the VRPA—and "clarif[ied]" that its intent was always that a VRPA civil action could *only* be brought by "a customer who has suffered actual damages."[2]

### C.    Plaintiff's Copycat, No-Injury Lawsuit

Plaintiff's Complaint alleges that she subscribes to *Reader's Digest,* one of Trusted Media's magazines (Compl. ¶ 11), and that Trusted Media violated the VRPA by disclosing her "Personal Reading Information" (i.e., "full names, titles of magazines subscribed to, and home addresses") (*id.* ¶¶ 8, 66), for marketing purposes (*id.* ¶¶ 7, 10, 44-45, 62-63).  The Complaint banks on the notion that Plaintiff need not plead or prove any injury beyond an alleged violation of the statute, nor any actual damages in order to obtain the $5,000 statutory remedy previously contained in the statute.  (*Id.* ¶ 89).[3]  Plaintiff claims, alternatively, that she has pled "actual damages" in the form of "overpayment." (*See* Pl. Letter, May 16, 2016 (Doc. 19) at 2.)

### D.    Plaintiff's Claims For VRPA Statutory Damages Were Never Allowed On A Class Basis Under Michigan Law

Plaintiff sued in federal court because she is barred from bringing her state VRPA claims on a class basis in Michigan state court.  The statutory damages formerly provided by the VRPA,

---

[2]  The Act contains several other clarifying and procedural amendments, including with respect to the "marketing" exemption and examples of acceptable "written notice". (*See* Hauser Decl., Ex. 2, § 3(e).)

[3]  The Complaint is larded with speculation about what Trusted Media purportedly discloses to third parties, referencing press reports about information-sharing practices and the "data mining" industry generally. (*E.g.*, Compl. ¶¶ 25-42.)  Suffice it to say, these references say nothing about Trusted Media's practices, and do not address the specific information the VRPA covers.

and on which the Complaint relies in lieu of actual damages, were never available on a class basis. In the 1989 amendments to the VRPA that included the statutory damages  provision, the Michigan Legislature did *not* authorize class actions.  Their failure to do so was significant.

Four years earlier, in 1985, the Michigan Court Rules were extensively revised to overhaul the state's treatment of class actions, including by creating Rule 3.501(A)(5).  *See* 5 Ronald S. Longhofer, Michigan Court Rules Practice, Text § 3501.3 (5th ed. 2004).  That Rule specifically provides that an action for the recovery of a statutory minimum "without regard for actual damages" cannot be maintained as a class action, unless the statute at issue "specifically authorizes" recovery in a class action.  M.C.R. 3.501(A)(5).  The Michigan Legislature did not specifically authorize such recovery in a class action in the VRPA statutory text.[4]  Instead, it specifically chose to confine the VRPA to individual actions, including, rather, a provision for attorney's fees to encourage individual actions.  *See* M.C.L. § 445.1715.

## ARGUMENT

## I.      Standard Of Review

When Article III standing is challenged on a Rule 12(b)(1) motion, the plaintiff bears the affirmative burden of proving, by a preponderance of evidence, that jurisdiction exists.  *Clarex Ltd. v. Natixis Sec. Am. LLC*,  No. 12 Civ. 0722 (PAE), 2012 WL 4849146, at *2-3 (S.D.N.Y. Oct. 12, 2012).  "[T]hat showing is not made by drawing from the pleadings inferences favorable to the party asserting it . . . a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing. . . ." *In re Whole Foods Market Grp., Inc. Overcharging Litig.*, No. 15 Civ. 5838 (PAE), --- F.Supp.3d ---, 2016 WL

---

[4]  The Michigan Legislature "is held to be aware of the existence of the law in effect at the time of its enactments." *Malcolm v. City of East Detroit*, 437 Mich. 132, 139 (1991).  Michigan statutes enacted after Rule 3.501 include specific class action authorization where the legislature so intends.  *See, e.g.*, M.C.L. § 445.815(2) ("A person who suffers loss as a result of a violation of this act may bring an individual or a class action to recover actual damages or $50.00, whichever is greater") (enacted 1988); M.C.L. § 445.322(2) (same, enacted 2011).

852796, at *6 (S.D.N.Y. Mar. 1, 2016) (citations, internal quotations omitted). "The requirement that the alleged harm be 'concrete' means that the Court 'need not credit [a complaint's] conclusory statements without reference to its factual context.'" *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"; plaintiff must support legal conclusions with factual allegations).

The same is true on a Rule 12(b)(6) motion: "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff cannot rely on a "threadbare" recitation, but must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## II.     Plaintiff Lacks Standing To Bring This No-Injury Action

"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008). The "irreducible constitutional minimum" of standing requires a plaintiff to establish an "injury in fact"—the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1547-48 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Although Congress may recognize previously unaddressed wrongs and grant a right of action, "Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *accord Spokeo*, 136 S.Ct. at 1547-48. Here, Plaintiff can establish neither Article III nor statutory standing under the VRPA to bring this action.

### A.     *Spokeo* Confirms That Plaintiff Cannot Establish Article III Injury-In-Fact

The Supreme Court's recent decision in *Spokeo* guides District Courts on what constitutes

"injury in fact."  Plaintiff does not come close in this case.  The Court reversed the Ninth Circuit's conclusion that an alleged violation of the Fair Credit Reporting Act ("FCRA") was, without more, an Article III "injury in fact."  As the Court stated, "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist."  *Id*. at 1548.  The Court emphasized in this regard that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation."  Accordingly, the plaintiff  "*could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.*"  *Id.* at 1549 (emphasis added).  *See also Hearst*, Slip Op. at 8 n. 4 (recognizing that under *Spokeo*, a bare statutory violation "is insufficient to confer standing to sue").[5]

Here, Plaintiff does not "satisfy the requirement of concreteness" and has no "risk of real harm."  *Spokeo*, 136 S.Ct. at 1549.  The essence of her claim is a procedural violation based on the alleged failure of "notice" regarding disclosures by Trusted Media for marketing purposes (which is alleged only by artfully omitting the notices contained in the very magazines at issue). Beyond those allegations, Plaintiff alleges no concrete harm whatsoever.  *Id.* at 1550.

As the Supreme Court made clear in remanding in *Spokeo,* "[a] violation of one of the FCRA's procedural requirements may result in no harm. . . ."  *Id.*  (providing two examples of no harm statutory violations:  an  alleged "fail[ure] to provide the required notice" and the

---

[5]   The Third Circuit's recent decision in *In re Nickelodeon Consumer Privacy Litig*., No. 15-1441 (3d Cir. June 27, 2016),  simply followed its prior decision *In re Google Inc. Cookie Placement Consumer Privacy Litig*., 806 F.3d 125 (3d Cir. 2015), as unaffected by *Spokeo*.   Unlike the Complaint here, plaintiffs in those cases made "highly specific allegations" that defendants "implanted tracking cookies on [plaintiffs'] personal computers"; no such "concrete, particularized, and actual" harm to personal property is alleged here.  *Google*, 806 F.3d at 134-35. Moreover, the federal VPPA statute at issue in *Nickelodeon* does not contain the Michigan VRPA notice provision allowing the very types of marketing "disclosures" Plaintiff complains of here.  Trusted Media's alleged non-compliance with that notice procedure stands in stark contrast to the *Nickelodeon* allegations that defendants deliberately misled parents into letting their children engage in online activity that defendant could then "track."

dissemination of certain inaccurate information about a plaintiff, such as an "incorrect zip code").  The same is *a fortiori* true here:  Plaintiff cannot satisfy Article III by only alleging a bare procedural violation divorced from any "concrete harm" or "material risk of harm."  *Id.*

Further, while *Spokeo* focuses on the "concreteness" element of injury in fact, the other requirements of Article III injury in fact—including that the alleged harm be "fairly traceable to the challenged conduct," and not "conjectural or hypothetical" (*id.* at 1547-48)—are also not met by Plaintiff's pleading.  Indeed, as shown *infra*, § II.D.,  to the extent Plaintiff's complaint even attempts to reference any harm, it is conclusory, implausible and fails as a matter of law. Certainly, the alleged "disclosures" here bear no relationship to the harm that the statute at issue was intended to address, and, contrary to the Supreme Court's guidance in *Spokeo*, do not give rise to "harms" traditionally recognized by the common law (*see Spokeo,* 136 S.Ct. at 1549); the "harm" Plaintiff alleges here is not just "difficult to prove or measure" (*id.*), it is non-existent.[6]

*Hearst* does not grapple with these points and is inconsistent with what *Spokeo* said and did in remanding.  Judge Torres' cursory analysis not only failed to address whether Plaintiff's allegations complied with *Spokeo's* mandate, but whether those allegations were even plausible and sufficient to show "more than a mere possibility" of injury.  *Iqbal*, 556 U.S. at 678.

**B.    Even If Congress Could Confer Article III Standing Based On A Bare Statutory Violation, A State Legislature Cannot**

Significantly, the Complaint in this case is based on a *Michigan state statute.*  As such, even without benefit of *Spokeo*, this case presents a different issue than cases "premised on the theory that '*Congress* may, by legislation, expand standing to the full extent permitted by

---

[6]  Thus, while the Court in *Spokeo* remanded for determination of whether the falsities alleged in that case "entail a degree of risk" of harm "sufficient to meet the concreteness requirement" (*id.* at 1550), here there are no false statements or any other grounds for alleging a concrete "material risk of harm."  *Id.; cf.* dissenting op. of Ginsburg, J., 136 S.Ct. at 1556 ("Far from an incorrect zip code, Robins complains of misinformation about his education, family situation, and economic status, inaccurate representations that could affect his fortune in the job market").

Art[icle] III.'"  *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015)

(italics in original).[7]  "[W]here, as here, a cause of action arises under *state* rather than *federal*

law," the state legislature may not so expand Article III standing by purporting to eliminate any

requirement of actual concrete injury, even had that been the state legislature's intent -- which

was decidedly *not* the Michigan legislature's intent here.  *Id.* (italics in original).

In *Ross*, Judge Furman found no authority to "suggest[] that a state legislature can confer

Article III standing upon a plaintiff who suffers no concrete harm merely by authorizing a private

right of action based on a bare violation of a state statute."  *Id.* (citing *Mangini v. R.J. Reynolds*

*Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal. 1992)); *accord Robainas v. Metropolitan Life Ins.*

*Co.*, 1:14-cv-09926-DLC, 2015 WL 5918200, at *6 & n. 7 (S.D.N.Y. Oct. 9, 2015) (Cote, J.)

(rejecting standing in no-injury class action involving same statute at issue in *Ross*).[8]  Judge

Furman did not reason that a state statute could never define an injury, nor give rise to Article III

standing (as Plaintiff's counsel has suggested in other contexts).  The point is far simpler—a state

legislature cannot expand the federal constitution by seeking recognition of a *no*-injury claim.

Simply put, the federal courts' role in the constitutional scheme is set by Article III, and

"[s]tates cannot alter that role simply by issuing to private parties who otherwise lack standing a

ticket to the federal courthouse." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013).  "State

courts may afford litigants standing to appear where federal courts would not, but the fact that a

state court would permit a plaintiff to assert an action has no bearing on the plaintiff's standing

under Article III." *LaPierre ex rel. Town of Yorktown v. DiBartolo*, No. 12-CV-1996 (ER), 2013

---

[7]  Prior decisions finding standing under the *federal* VPPA likewise invoke *Congress*' power to create new rights.
*E.g., Austin-Spearman v. AMC Network Entm't, LLC*, No. 14-CV-6840, 2015 WL 1539052, at *3 (S.D.N.Y. Apr. 7,
2015).  To the extent these cases find standing based on a technical statutory violation alone, they do not survive
*Spokeo*.  *See supra*, § II.A.  In any event, as discussed in text, even in a pre-*Spokeo* world, those cases would not
support Article III jurisdiction based on the alleged bare violation of a *state* statute or the specific allegations here.

[8]   These precepts were not raised or addressed in the previously filed VRPA cases in the Eastern District of
Michigan (which, of course, are not binding on this Court).

WL 656313, at *3 (S.D.N.Y. Feb. 21, 2013).

**C.    The Michigan Legislature Has Made Clear That It Did Not Intend to Create A No-Injury Civil Action—Actual Damages Are Required**

The Michigan Legislature has now conclusively stated that it never was its intention to create a no-injury civil action in the VRPA—instead, only a customer "who suffers actual damages as a result of a violation of this act" may pursue a civil action.  Act, § 5(2); *see also id.*, Enacting Provisions, § 2.  (Hauser Decl., Ex. 2.)  The Amendment was passed to "cure" abusive class actions seeking to capitalize on the hook of a $5,000 per claim statutory remedy without any harm, following controversial judicial applications of the VRPA's civil remedies, where judges expressed "hesitation" and "reluctance" that the plaintiffs could bring such claims without harm.  *See Halaburda*,  2013 WL 4012827, at *4.  The Michigan Legislature responded, after hearing testimony from the magazine publishing industry and one of the class action lawyers who brought the prior cases.  The Legislature explicitly stated its intent to *clarify* the VRPA's original intent and *cure* those incorrect interpretations.  And it sought to do so immediately, stating that the provision takes immediate effect.  Under settled Michigan law[9], that expression of the VRPA's meaning and legislative intent with respect to remedial matters must be given immediate effect.  Since Plaintiff lacks (and therefore, failed to sufficiently plead) actual damages, she lacks statutory standing.[10]

Judge Torres' conclusion in the *Hearst* case that the legislature's intent was not "clearly manifested" (Slip Op. at 8-9) is contrary to Michigan law and disregards the Amendment's plain "curative and clarifying" language.  Most significantly, her finding that there was "no evidence that the law was passed in response to legal controversy" (*id*. at 11), is flat out wrong, as shown below.

---

[9]  "The question of [whether] a Michigan statute should be applied retroactively is a matter of state law."  *Bonilla v. Lafler*, No. 06-15466, 2009 WL 2386080, at *21 (E.D. Mich. July 30, 2009).

[10]  The statutory standing issue is whether the "statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  *Warth*, 422 U.S. at 500.  Unlike Article III standing, lack of statutory standing requires dismissal under Fed. R. Civ. P. 12(b)(6), not Rule 12(b)(1).

Further, Judge Torres failed to acknowledge the amendment's provision stating it is to take "immediate effect" and  misapplied the separate, independent ground for retroactive application of the amendment to the remedies section—namely, that the removal of the statutory damages remedy is remedial and does not impair any vested rights (nor impose any new obligations).  In view of these fundamental errors, as explained below, the *Hearst* decision should not be followed and the VRPA as amended should be applied by this Court.

### 1. The Michigan Legislature Intended The Actual Damages Requirement To Apply Retroactively

"In determining whether a statute should be applied retroactively or prospectively only, '[t]he primary and overriding rule is that legislative intent governs.'"  *Frank W. Lynch & Co. v. Flex Technologies, Inc*., 463 Mich. 578, 583 (2001) (citation omitted).  Here, the plain language of the Act confirms the legislature's intent to make clear the *original* meaning of the VRPA.  The Act purposefully states that it is "curative and intended to clarify" the VRPA's civil remedies provision as one requiring actual damages.  (Enacting Provisions, § 2).

Under Michigan law, a "statutory enactment denominated as 'curative' . . . has been defined as legislation enacted to cure defects in prior law," and such laws are found to "operate retrospectively."  *Romein v. Gen. Motors Corp*., 168 Mich. App. 444, 455 (1988),  *aff'd*, 436 Mich. 515 (1990); *Seaton v. Wayne Cty. Prosecutor*, 233 Mich. App. 313, 323 (1998) ("Courts have consistently upheld the retroactive application of 'curative' legislation").  Amendments *clarifying* an existing law likewise apply retroactively.  *Allstate Ins. Co. v. Faulhaber*, 157 Mich. App. 164, 167 (1987) (because "the amendment was intended by the Legislature to clarify [an] ambiguity. . . the Legislature intended for it to apply retroactively to all actions"); *People v. Sheeks*, 244 Mich. App. 584, 590 (2001).

In short, "curative and clarifying" is a term of art with a specific meaning under Michigan

law and the legislature deliberately included it in the Act to express its intent as to how this

legislation should be applied.   It means the amendment operates as "a legislative interpretation of

the original act" that "explains how the legislature intended the original statute to operate" and as

such "applies retroactively as if it was enacted as part of the original statute."   *In re Oswalt*, 444

F.3d 524, 528 (6th Cir. 2006) (applying Michigan law); *Detroit Edison Co. v. Janosz*, 350 Mich.

606, 614 (1957) ("amendments . . . adopted for the purpose of making plain what the legislative

intent had been all along from the time of the statute's original enactment" apply retroactively).

     In such a case, use of the term "retroactive" is redundant; the *Hearst* Opinion's conclusion

that such "additional" language is required (Slip Op. at 9) has no basis in, and is contrary to,

Michigan law.   For example, the amendment in *People v. Sheeks* did not use the word

"retroactive," but since the court identified a clarifying intent in the legislative bill analysis,  it had

retroactive effect.   244 Mich. App. at 590.   Here, of course, the clarifying intent was expressed *in

the Enacting Provisions of the bill itself*.[11]

     Furthermore, where, as here,  an amendment is "enacted soon after controversies arose as

to the interpretation of the original act, it is logical to regard the amendment as a legislative

interpretation of the original act—a formal change—rebutting the presumption of substantial

change."   *Detroit Edison Co. v. State*, 320 Mich. 506, 520 (1948); *In re Oswalt*, 444 F.3d at 528.

That is what happened here. While the VRPA sat on the books for over twenty-five years, it was

only recently that enterprising plaintiffs' class action lawyers dusted it off, suing magazine

publishers for millions in damages on behalf of subscribers that suffered no actual harm.   The

amendment was passed in the context of these VRPA lawsuits, in which Michigan federal judges

---

[11]   *See also Kelly Servs., Inc. v. Treas. Dept.*, 296 Mich. App. 306, 317 (2012) ("the legislative bill analysis clearly
indicates the clarifying nature of the amendment"; rejecting "contention that the amendment only took effect
prospectively"); *Prod. Credit Ass'n of Lansing v. Dep't of Treas.*, 404 Mich. 301, 318 (1978) ("a reasonable
construction of the amendment evidences a legislative intent to clarify the law rather than to change it"; amendment
contained no retroactivity or other express language of clarifying intent).

were grappling, *inter alia,* with whether actual damages were required to support standing to sue under the VRPA.[12]  Thus, the Amendment was not enacted in a vacuum:   after controversial judicial decisions declined to dismiss putative federal class actions for staggering amounts of statutory damages on behalf of plaintiffs who suffered no actual damages, the Michigan Legislature stepped in to explicitly clarify that this was *not* what it intended.[13]

The *Hearst* decision entirely discarded this critical context, commenting that Hearst "provided no evidence that the law was passed in response to legal controversy." (Slip Op. at 11.) That is patently incorrect.  In fact, the legislature was acutely aware of the VRPA class action lawsuits and heard testimony both from the plaintiffs' bar and from representatives of the magazine industry that were defending them. *See, e.g.,* Hauser Decl., Ex. 3, Testimony of Mary Holland, V.P. of Gov't Affairs for MPA–Ass'n of Magazine Media, Comm. Cmte., Mich. Senate (the "lack of clarity on actual damages has been exploited by entrepreneurial class action lawyers in the magazine lawsuits"); Ex. 4, Testimony of Ari J. Scharg, Cmte. on Commerce and Trade, Mich. House of Reps., Feb. 9, 2016, p. 4 (bill responded to "civil actions to enforce" VRPA).  It would make no sense for the Michigan Legislature to act to cure abuses, and clarify its statute, but not ensure those abuses come to an end immediately—and thus included language to that exact effect.

The text of the Amendment further supports that the Legislature understood and intended that its actual damages clarification would operate retroactively, as reflected in the fact that,

---

[12]  *See, e.g., Halaburda, supra,* 2013 WL 4012827, at *4-5; *Cain v. Redbox Automated Retail, LLC*, 981 F.Supp.2d 674, 683-84 (E.D. Mich. 2013); *Coulter-Owens v. Time, Inc*., 2016 WL 612690, *3 (E.D. Mich. Feb. 16, 2016); *Kinder v. Meredith Corp*., 2014 WL 4209575, at *2 (E.D. Mich. Aug. 26, 2014).

[13]  Michigan courts have consistently applied clarification of original legislative intent even though, obviously, a subsequent legislature consists of different legislators.  *See, e.g., Oswalt, supra,* 444 F.3d at 528, and cases cited therein (applying 2003 amendment to 1987 statute). While Michigan law governs this issue, U.S. Supreme Court precedent has long been to the same effect.  *See, e.g., Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 380-81 (1969) (Congress' 1959 amendment clarified meaning of statutory phrase "which had been in the Act since 1927"; "[s]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction"); *N.L.R.B. v. Bell Aerospace Co.,* 416 U.S. 267, 275 (1974); *Bailey v. Clark*, 88 U.S. 284 (1874).

where it intended other sections of the amendment to operate prospectively, it explicitly so provided.  *See* SB 490, § 3(d) (provision regarding disclosures incident to ordinary course of business only applies prospectively to "information that is created or obtained after the effective date of the amendatory act that added this subdivision").  In contrast, the actual damages requirement (§ 5) is not restricted to prospective application.  The presence of language of future application in one section of the law, and its absence in another is further evidence of legislative intent.  *See People v. Peltola*, 489 Mich. 174, 185 (2011).

Even though the legislative intent is clear from the face of the amendment, the legislative history further confirms that the Michigan Legislature understood that the Act's actual damages provision would have retroactive effect.  Both a legislator and a partner in the plaintiffs' firm that first filed the VRPA lawsuits in Michigan federal court raised the Amendment's retroactive effect in opposition to the Act (to no avail).  *See* Hauser Decl., Ex. 5, Sen. Warren, Jour. of Mich. Senate, 98th Legis., Apr. 12, 2016, p. 473 ("if passed, the law will likely be interpreted as retroactive");  Ex. 4, Scharg Testimony, pp. 8-10 (warning that proponents seek to "giv[e]  SB 490 retroactive effect").  Thus, legislators understood the retroactive impact of SB 490.

## 2.     The Amendment Is Remedial And Does Not Impair Vested Rights

Even if the legislative intent were not clear (and it is), the amendment to the VRPA remedies provision to eliminate statutory damages and require actual damages would still be retroactive because it is "remedial." Under Michigan law, "statutes related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy . . . will, in the absence of language clearly showing a contrary intention, be held to operate retrospectively and apply to all actions accrued, pending or future, there being no vested right to keep a statutory procedural law unchanged and free from amendment." *Seaton*, 233 Mich. App. at 318 (citations omitted); *accord People v. Jackson*, 465 Mich. 390 (2001).

There is no question that the Act's clarification that actual damages are required for a plaintiff to avail herself of civil remedies is "remedial." Its stated intention is to "correct[] a perceived flaw or defect," and cure "mischiefs" inadvertently created by the original statute, and thus "remed[ies] defects therein, or mischiefs thereof." *Rookledge v. Garwood*, 340 Mich. 444, 453 (1954). Moreover, it affects only "the means employed to enforce a right or redress an injury"—specifically, *how* a plaintiff may redress a VRPA right—and does not impair the right itself. *Seaton*, 233 Mich. App. at 320 (quoting *Rookledge*, 340 Mich. at 453).

It is "firmly established that there is no vested right in any particular procedure or remedy." *City of Detroit v. Walker*, 445 Mich. 682, 703 (1994) (citation omitted). That is because "a statutory right, though a valuable right, is not a vested right, and the holder thereof may be deprived of it." *Lahti v. Fosterling*, 357 Mich. 578, 589 (1959). Thus, for example, in *In re Certified Questions,* 416 Mich. 558 (1982), the Michigan Supreme Court held a state statute establishing comparative negligence in products liability actions applied retroactively even though it was enacted after plaintiff's injury and lawsuit, but prior to judgment. The statute was "not a legal bar" to any cause of action but instead "mitigate[d] damages in products liability actions," and as such did not "take away vested rights." *Id*. at 577-78.

The same is true here. The VRPA Amendment does not impact any vested rights Plaintiff may have had by clarifying that a plaintiff must have actual damages to pursue a claim. The Amendment does not abolish Plaintiff's cause of action. It addresses only the requirements for obtaining a legislatively-created remedy thereunder, which is, by definition, *remedial*.[14]

---

[14]  Further, *even if*, as Judge Torres held, amending the VRPA to disallow the statutory damage remedy could somehow be deemed substantive and not remedial, and as such was still available to Plaintiff, the legislature has unequivocally stated that its intent *ab initio* was that statutory damages were never awardable without proof of actual damages. Proof of actual damages was always a prerequisite to recovery, notwithstanding errant decisions that had rejected such an interpretation of the VRPA. *E.g., Kinder v. Meredith Corp*., 2014 WL 4209575, at *2. The Michigan Legislature has conclusively expressed its contrary intent, which is consistent with how similar provisions

Plaintiff has no vested right in the "windfall" of a statutorily created remedy, which the Legislature never intended to provide without actual damages in any event.

In short, the Michigan Legislature has spoken, and has stated unequivocally that to have standing to bring a claim under the VRPA requires actual damages. Moreover, even if that express legislative intent could be ignored, the Legislature did not, and as a matter of law, *could not* have created Article III standing merely by recognizing a new limited right under the VRPA. And, in either case, Plaintiff cannot argue that a violation of the VRPA, standing alone and in the absence of harm, confers upon her an "injury" or "actual damages" sufficient to establish either Article III or statutory standing.

### D. Plaintiff's Conclusory And Implausible Allegations Do Not Establish Injury

To the extent Plaintiff purports to plead she has suffered any actual damages—based on conclusory allegations of "deprivation of value" or "overpayment" as a result of expected privacy interests created by the existence of the VRPA (Compl. ¶ 84; *see also id.* ¶¶ 11, 73-75)—that attempt fails. This District squarely rejected a similar articulation of "harm" in *In re DoubleClick Inc. Privacy Litig.,* a seminal privacy decision in which the court noted that although "demographic information is valued highly . . . the value of its collection has never been considered an economic loss to the subject" and rejecting the argument that the "value of this collected information constitutes damage to consumers or unjust enrichment to collectors." 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001). Subsequent cases agree.[15]

---

in other statutes have been interpreted. *See, e.g., Doe v. Chao*, 540 U.S. 614, 619 (2004) (similar language in Privacy Act requires proof of actual damage). As discussed above, that intent is to be given immediate effect.

[15] *See, e.g., Carlsen v. Gamestop, Inc.*, 112 F.Supp.3d 855, 861 (D. Minn. 2015) ("courts have generally found 'overpayment' theories insufficient to establish injury, even in situations involving highly sensitive PII [personally identifiable information]"); *Silha v. ACT Inc.*, 807 F.3d 169 (7th Cir. 2015) (plaintiffs lacked standing where they lost nothing of value as result of the sale of their PII); *Bose v. Interclick, Inc.*, No. 10 Civ. 9183 (DAB), 2011 WL 4343517, at *4-6 (S.D.N.Y. Aug. 17, 2011) (plaintiff's "claim that Interclick collected her personal information . . . does not constitute cognizable loss"); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327

The *Hearst* decision, adopting the plaintiffs' legal conclusion that Hearst "unjustly retained the economic benefit the value of [plaintiff's] information conferred" (Slip Op. at 7), simply ignored the foregoing authority.  It is basic that a complaint's allegations must be both actually "plausible," and sufficient to show "more than a sheer possibility" of injury.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  A court should not "credit [a complaint's] conclusory statements without reference to its factual context," *Amidax*, 671 F.3d at 146, or "draw unwarranted inferences in order to find standing."  *In re Whole Foods*, 2016 WL 852796, at *6.  Yet, *Hearst* accepted at face value the plaintiffs' bare bones, conclusory claims that they were harmed as a result of defendant's conduct, without pointing to any fact or evidence of a concrete and particularized injury that is anything other than entirely hypothetical.  "A federal court, properly cognizant of the Art. III limitation upon its jurisdiction, must require more than [plaintiffs] have shown before proceeding to the merits."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 46 (1976);  *Spokeo*, 136 S.Ct. at 1549 (remanding where complaint allegations were insufficient to establish standing).  Certainly, more is required to show the actual damages required for VRPA statutory standing.

Plaintiff's conclusory allegations of injury are implausible on their face.  The notion that the price a Michigander pays for a subscription to *Reader's Digest* includes a "non-disclosure" premium (as opposed to just the right to receive copies of the magazine) is implausible given both the VRPA's permissive disclosures for marketing purposes, and the magazine's own written notice of marketing disclosures. *See* M.C.L. § 445.1713(d) (permitting disclosures for marketing purposes), and *infra* § IV.

Plainly put, Plaintiff can articulate no harm (much less actual damages) from the alleged "disclosure" of her subscription information, only a bare violation of the notice procedures of that

---

(E.D.N.Y. 2005) ("there is absolutely no support for the proposition that the personal information of an individual JetBlue passenger had any value for which that passenger could have expected to be compensated").

statute.   And, indeed, Plaintiff's claim that she has a reasonable and valuable privacy interest in the fact that she subscribes to *Reader's Digest* is fatally undermined by the fact she readily made that information *a matter of public record* in this lawsuit.

### III.   As A Prudential Matter Of Comity And Federalism, The Court Should Decline To Assert Jurisdiction Over Plaintiff's Class Action That Subverts Michigan Law

Plaintiff's lawsuit flouts not only the Michigan Legislature's express intent that actual damages are required for a VRPA civil action, but also the Legislature's express intent that VRPA actions like Plaintiff's not be brought as putative class actions.   Apart from Article III's bedrock requirement of injury-in-fact, the Supreme Court has recognized prudential limits on federal jurisdiction that are "essentially matters of judicial self-governance."   *Warth v. Seldin*, 422 U.S. at 500.   Federalism and comity are certainly "prudential" considerations that the Court may consider.   *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 432 (2010).   Thus, even if a federal court has "jurisdiction of a particular proceeding, it may, in its sound discretion, . . . 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest'"—it being in the public interest that federal courts "exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.'"   *Burford v. Sun Oil Co.*, 319 U.S. 315, 317–18 (1943) (citations omitted).

Plaintiff's class action lawyers chose not to go to a Michigan court, because Michigan law expressly barred her from bringing the claim on a class basis. Accepting Plaintiff's invitation to overrule the Michigan Legislature's judgment about the proper remedy for enforcement of its statute is not "wise judicial administration." *Levin*, 560 U.S. at 419-20, 423 (district court properly declined to exercise jurisdiction "as a matter of comity"); *Gordon v. Crouchley*, 554 F. Supp. 796, 799-800 (D.R.I. 1982) ("plaintiff cannot, by the simple expedient of electing to ignore unobstructed state avenues of redress, pave the way for a detour through the federal

courts, especially in a situation in which important issues of state policy would perforce be by-passed"; dismissing based on "well-founded principles of comity and of abstention").

Trusted Media recognizes that courts do not often invoke these considerations to decline jurisdiction.  But where, as here, the exercise of jurisdiction would so patently thwart legislative intent and Plaintiff's case is so obviously an attempt to take advantage of a perceived federal jurisdiction loophole,[16] it would be appropriate for the Court to decline jurisdiction.

**IV.     Plaintiff Fails To State A Claim Because Trusted Media Provided Written Notice Her Information Could Be Disclosed For Marketing Purposes, As The VRPA Allows**

The VRPA expressly permits disclosure of information about an individual's purchase of written materials for the "exclusive purpose of marketing goods and services directly to the consumer" as long as the person disclosing the information "inform[s] the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d).[17]  Plaintiff has alleged no non-marketing uses of her subscription information.

Instead, Plaintiff asserts, in conclusory fashion, that Trusted Media "uniformly fails to obtain any form of consent from—or even provide effective notice to—its subscribers before

---

[16]   The sole basis for jurisdiction alleged in the Complaint is the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (*See* Compl. ¶ 13.)  Congress enacted CAFA to provide an expanded basis for *defendants* to *remove* multi-state class actions "of national importance" from state to federal court.  *See, e.g.,* Pub. L. No. 109-2, §§ 2, 4, 5. Plaintiff's use of CAFA to create a federal forum for class action litigation that state law expressly disallows creates an absurd and unsustainable result. Even where a statute's terms are "broad enough to include an act in question, . . . a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words," may "make[] it unreasonable to believe that the legislator intended to include the particular act."  *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 454 (1989).  That is the case here.  In enacting CAFA, there is no doubt that "Congress envisioned fewer—not more—class actions overall. Congress surely never anticipated that CAFA would make federal courts a mecca for . . . class actions seeking state-created penalties for claims arising under state law . . .  that would be barred from class treatment in the State's own courts."  *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 459 (2010) (Ginsberg, J., dissenting).  While *Shady Grove* addressed a similar New York state ban on certain class actions, the issue of abstention from jurisdiction based on prudential considerations of comity and federalism was not addressed.

[17]   The recent amendment amends the text of the VRPA "marketing" exemption  to make clear that a "written notice" sufficient to qualify for the exemption may, *inter alia*, be included in the magazine or in an online privacy policy.  (*See* Hauser Decl., Ex. 2, § 3(e).)

disclosing their Personal Reading Information." (Compl. ¶ 47.) But consent is *not* required for

the VRPA's marketing exception to apply—only notice and an opportunity to opt out is required.

*See* M.C.L. § 445.1713(d). There can be no dispute that *Reader's Digest* magazines provide just

that. Every issue of *Reader's Digest* magazine contains the following notice:

> **CONSUMER INFORMATION**: Trusted Media Brands, Inc. may share
> information about you with reputable companies in order for them to offer
> you products and services of interest to you. If you would rather we not
> share information, please write to Reader's Digest Customer Care, PO
> Box 6095, Harlan, Iowa 51593-1595. (Hauser Decl., Ex. 1.)

This Court can take judicial notice of the contents of these disclosures (and of the

magazine) because the contents of the magazine, and disclosures therein, are "integral to the

Complaint." *See, e.g., In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, 92 F.

Supp. 3d 163, 171 (S.D.N.Y. 2015) (citing *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004)).

Further, as a general matter, judicial notice may be taken of "statements" in widely circulated

newspapers and periodicals where, as here, they are presented "only for the fact of their

publication." *In re MBIA, Inc., Securities Litig.*, 700 F.Supp.2d 566, 576-77 (S.D.N.Y. 2010)

(Karas, J.) (citations omitted). Notably, Plaintiff has not alleged any details of her alleged

subscription, including the date(s) on which she subscribed or the method of her subscription.

Plaintiff cannot, however, avoid consideration of relevant documents that would reasonably be

expected to be referenced in a complaint by carefully omitting such references.[18]

It is clear from the magazines themselves that Trusted Media provided explicit written

notice to Plaintiff that her subscription purchase information could be disclosed for marketing

purposes, and that she could opt out. *This is exactly what the VRPA permits*.

---

[18] *See, e.g., Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 312 (E.D.N.Y. 2015), *aff'd*, 628 F. App'x 59 (2d Cir. 2016) (plaintiff's "failure to include matters of which as [ ] pleader[ ] [he] had notice and which were integral to [his] claim—and that [he] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion'") (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

## V.       The VRPA Violates The First Amendment

While the Complaint fails on several fronts without even reaching the unconstitutionality

of the VRPA, that is yet another reason for dismissal.  The VRPA targets truthful, non-

misleading speech by certain speakers in certain circumstances on certain topics (customers'

purchases "at retail" of, *inter alia,* "written materials").  Such content- and speaker-based

prohibitions are "presumptively invalid" under the First Amendment.  *U.S. v. Caronia*, 703 F. 3d

149, 163 (2d Cir. 2012) (quoting *Sorrell v. IMS Health*, 131 S. Ct. 2653, 2662-64 (2011)).  Laws

that define regulated speech by subject matter are content-based and, as a result, subject to strict

scrutiny, regardless of whether they regulate "commercial" or "non-commercial" speech.  *Reed*

*v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015).[19]  It is the "rare case[] in which a speech

restriction withstands strict scrutiny."  *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1666 (2015).

The VRPA's content-based regulation encompasses everything from news reporting

about public figures' media consumption (the subject of the Bork article) to speech about any

person's purchase of any "written materials." Such a facially overbroad statute cannot survive

strict scrutiny under the First Amendment.  A law is void under the overbreadth doctrine if it

"sweeps within its ambit other activities that . . . constitute an exercise" of protected expression.

*Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).  That is precisely what the VRPA does.

By its terms, the VRPA would criminalize and civilly penalize any news organization

that sells its publications "at retail" for publishing a truthful story indicating that someone—

including, for example, a candidate for public office—bought one of its publications, no matter

---

[19]  Contrary to what Plaintiff's counsel have argued in other VRPA litigation, and what Judge Torres concluded in the *Hearst* case, the VRPA does not target "commercial" speech.  The VRPA was passed to prevent truthful newspaper articles like the one about Judge Bork, but  speech *about* Plaintiff's transaction with Trusted Media (her purchase of a magazine subscription), is *not* speech that does "no more than propose a commercial transaction" with Trusted Media (such as an advertisement for its magazines), which is the Supreme Court definition of commercial speech. *Va. State Bd. of Pharmacy v. Va. Citizens Cons. Council,* 425 U.S. 748, 762 & n.24 (1976).

how newsworthy that information was.[20]  A statute that would allow such an intrusion into a news organization's editorial process, threatening to punish truthful speech of public importance, is wholly inconsistent with the First Amendment and cannot be countenanced.  *See, e.g., Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Further, since *Sorrell*, the Second Circuit and nearly every appellate court to consider cases of commercial or other forms of speech traditionally subject to "intermediate" scrutiny have applied some form of heightened scrutiny to content-based regulations like the one here. *See U.S. v. Caronia*, 703 F.3d at 164; *Retail Digital Network, LLC v. Appelsmith*, 810 F.3d 638, 648 (9th Cir. 2016).  The VRPA cannot withstand that heightened scrutiny.  Assuming *arguendo* that Plaintiff could establish a legitimate, non-speculative governmental interest that the VRPA serves, she could not sustain her burden of showing that the VRPA "directly advances" that interest and is "not more extensive than is necessary to serve that interest"—i.e., that it is "narrowly drawn."  *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002).

Particularly salient to that inquiry is whether the statute is "underinclusive," that is, "so pierced by exemptions and inconsistencies" that it does not directly advance the government's interest.  *Greater New Orleans Broad. Ass'n, Inc. v. U.S.,* 527 U.S. 173, 190 (1999).  *E.g. Sorrell*, 131 S. Ct. at 2663, 2671 (statute could not survive even "intermediate" scrutiny, because it impermissibly sought to advance its policy objectives by "restraining certain speech by certain speakers").   Here, the asserted government interest is fatally undermined by the statute's favoring of "marketing" over non-marketing speech; and favoring "non-retail" sales over sales

---

[20]  Indeed, the statute was expressly aimed at preventing news reporting on reading habits of public figures.  As Judge Torres concedes:  "the law might preclude a publisher like Defendant from printing an article identifying a political candidate as one of its subscribers. . . . Indeed, this is precisely what the law was designed to do. . . ."  *See Hearst*, Slip Op. at 30-31.  The notion that there is no "realistic danger" First Amendment interests will be compromised, because it is only "the seller of the written material, sound recording, or video" that is barred from "report[ing] about the consumer's purchases" (*id*. at 31) is an astonishingly cavalier treatment of a whole industry's First Amendment rights.

made "at retail." The VRPA is "wildly underinclusive when judged against its asserted justification, which in our view is alone enough to defeat it." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2740 (2011) (invalidating statute singling out video game manufacturers for "disfavored treatment," but not "booksellers, cartoonists, and movie producers").

## VI.   Plaintiff's Tag-Along Unjust Enrichment Claim Fails As A Matter of Law

Plaintiff's unjust enrichment claim is premised exclusively on the notion that the price she paid for her subscriptions to *Reader's Digest* included a "premium" for non-disclosure of her subscription information. (Compl. ¶¶ 11, 82-83, 86-87.) However, that purported expectation is only based on the VRPA's prohibition on disclosure of subscription information. (*See id.*)

*First*, any privacy interest in non-disclosure of Plaintiff's subscription information is explicitly covered by the VRPA, which provides her exclusive remedy, and Plaintiff's unjust enrichment claim is preempted under Michigan law. Where, as here, "comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter." *Kraft v. Detroit Ent'mnt, L.L.C.,* 261 Mich. App. 534, 545 (2004) (unjust enrichment and other common law claims preempted by statute); *Jackson v. PKM Corp.*, 430 Mich. 262, 279 (1988) (same).

*Second*, unjust enrichment is an equitable doctrine, and "Michigan cases have consistently held that '[e]quity will not take jurisdiction where there is a full, complete, and adequate remedy at law'"—here, under the VRPA. *Pacheco v. Boar's Head Provisions Co.*, No. 1:09-CV-298, 2010 WL 1323785, at *4-5 (W.D. Mich. Mar. 30, 2010) (dismissing claim). Notably, the *Hearst* decision did not assess this second grounds for dismissal.

In short, Plaintiff either has a claim under the VRPA for Trusted Media's allegedly improper disclosure of her subscription information (in which case the VRPA provides her a complete and

adequate remedy), or she does not (in which case, Trusted Media cannot have been unjustly enriched under Plaintiff's theory). Because the VRPA provides the exclusive legal remedy, if any, for Plaintiff's claims, her equitable claim for unjust enrichment claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In any event, as discussed *supra*, § II.D., the premise for Plaintiff's unjust enrichment claim—that the privacy of her subscription information has intrinsic monetary value (*see* Compl. ¶¶ 11, 73, 84, 86)—is both legally and factually untenable.

## CONCLUSION

For the foregoing reasons, Plaintiff's Class Action Complaint should be dismissed in its entirety and with prejudice for lack of standing and/or jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);.

Dated:  July 15, 2016

Respectfully Submitted,
DENTONS US LLP

By:  _____

Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
sandra.hauser@dentons.com

Natalie J. Spears
Kristen C. Rodriguez
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel:  (312) 876-8000
Fax:  (312) 876-7934
natalie.spears@dentons.com
kristen.rodriguez@dentons.com

*Counsel for Defendant*
*Trusted Media Brands, Inc.*

96192347