**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SHANNON TAYLOR, individually and on behalf of
all others similarly situated,

                          Plaintiff,

      v.

TRUSTED MEDIA BRANDS, INC.,

                        Defendant.

Civil Action No. 16-cv-01812-KMK

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated:  January 11, 2018

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
        jmarchese@bursor.com
        pfraietta@bursor.com

*Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.    Michigan's Preservation Of Personal Privacy Act ......................... 2

    B.    Plaintiff's Allegations .................................................................... 3

    C.    The Litigation History And Settlement Discussions ...................... 4

TERMS OF THE SETTLEMENT ...................................................................... 5

    A.    Class Definition ............................................................................. 5

    B.    Monetary Relief ............................................................................. 5

    C.    Release ........................................................................................... 6

    D.    Notice And Administration Expenses............................................. 6

    E.    Incentive Award And Attorneys' Fees And Expenses ................... 6

ARGUMENT....................................................................................................... 6

    I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE................................................................................. 6

        A.    Numerosity.............................................................................. 7

        B.    Commonality............................................................................ 8

        C.    Typicality .............................................................................. 10

        D.    Adequacy .............................................................................. 11

            1.    Common Questions Predominate ................................. 12

            2.    A Class Action Is A Superior Mechanism.................... 13

    II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ................. 14

    III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ............................................................................................. 16

        A.    The Proposed Settlement Is Procedurally Fair........................... 17

        B.    The Proposed Settlement Is Substantively Fair ......................... 18

            1.    Litigation Through Trial Would Be Complex, Costly, And Long  (*Grinnell* Factor 1) .......................... 19

            2.    The Reaction Of The Class Is Overwhelmingly Positive (*Grinnell* Factor 2) ...................................... 21

            3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) .......................................................... 22

            4.    The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (*Grinnell* Factors 4, 5, And 6)........................................ 23

i

     5.    Defendant Probably Could Not Withstand A
Greater Judgment (*Grinnell* Factor 7).............................................. 24

     6.    The Settlement Amount Is Reasonable In Light Of
The Possible Recovery And The Attendant Risks Of
Litigation (*Grinnell* Factors 8 And 9)............................................. 24

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
  271 F. App'x 41 (2d Cir. 2008) ........................................................ 15

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................. 12, 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) .................................................................. 13

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ......................................................... 11, 12

*Beckman v. Keybank, N.A.*,
  2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) .......................................... 14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Mangaged Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ............................................................. 8

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..................................................... 18, 21, 25

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ............................................................... 8

*Coulter-Owens v. Time Inc.*,
  2017 WL 2731309 (6th Cir. June 26, 2017) ............................................. 19

*Coulter-Owens v. Time, Inc.*,
  308 F.R.D. 524 (E.D. Mich. 2015) ................................................. 7, 9, 11

*Cromer Finance Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) ........................................................ 14

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008) .......................................................... 9

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) .................................................... 11, 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................... 14

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ................................................. 16, 24, 25

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................. 25

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ............................................................................................ 10

*Hanlon v. Chrysler*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ................................................................ 17

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................. 19, 22, 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................................................. 17

*In re Google Buzz Privacy Litig.*,
    2011 WL 7460099 (N.D. Cal. June 2, 2011) ...................................................... 2, 3, 5, 20

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................................ 15

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................................ 21

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................................................ 21

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) ............................................................................... 9

*In re Prudential Insur. Sales Practices Litig.*,
    962 F.Supp. 450 (D.N.J. 1997) ....................................................................................... 13

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .................................................................................... 11

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ........................................................................................... 13

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ..................................................... 18, 21, 23

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ........................................................................................... 25

*Kinder v. Meredith Corp.*,
    2016 WL 454441 (E.D. Mich. Feb. 5, 2016) ............................................................. 9, 13

*Krueger v. N.Y. Tel. Co.*,
    163 F.R.D. 433 (S.D.N.Y. 1995) ...................................................................................... 8

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................................................... 2, 20

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)......................................................................... 7, 10

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. 2012).................................................................. 21

*Matheson v. T-Bone Rest., LLC*,
   2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ................................................... 16

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ....................................................................... 13

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009).............................................................................. 17

*Michalow v. E. Coast Restoration & Consulting Corp.*,
   2011 WL 6942023 (E.D.N.Y. Nov. 17, 2011)...................................................... 8

*Monaco v. Stone*,
   187 F.R.D. 50 (E.D.N.Y. 1999) ........................................................................... 8

*Morris v. Affinity Health Plan*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)................................................................ 14

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).............................................................................. 24

*PaineWebber*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................... 23

*Parker v. Time Warner Entertainment Co.*,
   239 F.R.D. 318 (E.D.N.Y. 2007) ......................................................................... 9

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)......................................................................... 8, 10

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986).............................................................................. 12

*Supnick v. Amazon.com, Inc.*,
   2000 WL 1603820 (W.D. Wash. May 18, 2000).................................................. 10

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) ..................................................................... 19

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
   2004 WL 2997957 (S.D.N.Y. May 14, 2004) ..................................................... 25

*Tiro v. Public House Invs., LLC*,
   2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ................................................... 16

*Torres v. Gristede's Oper. Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) .................................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .......................................................................... 15, 16, 17

*Weigner v. City of N.Y.*,
   852 F.2d 646 (2d Cir. 1988) ................................................................................. 15

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................... 22

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........................................................ 14

*Yuzary v. HSBC Bank USA, N.A.*,
   2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .......................................................... 14

**STATUTES**

Michigan Preservation of Personal Privacy Act
   M.C.L. § 445.1711, *et seq.* ............................................................................ *passim*

**RULES**

Fed. R. Civ. P. 16 ............................................................................................... 4

Fed. R. Civ. P. 23 ...................................................................................... *passim*

Fed. R. Civ. P. 26 ............................................................................................... 4

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002) ............. 17

Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain
Language Guide* 3 (2010) ................................................................................. 15

## INTRODUCTION

On October 17, 2017, this Court preliminarily approved the Class Action Settlement between Plaintiff Shannon Taylor and Defendant Trusted Media Brands, Inc. ("Defendant" or "TMBI") and directed that notice be sent to the Settlement Class.  ECF No. 75.  The settlement administrator, Kurtzman Carson Consultants LLC ("KCC") has implemented the Court-approved notice plan and direct notice has reached approximately 91.37% of the certified Settlement Class. The reaction from the Class has been overwhelmingly positive, which is not surprising given that this is the largest total dollar settlement to date under Michigan's Preservation of Personal Privacy Act ("PPPA"), M.C.L. §§ 445.1711-1715.  Specifically, of the approximately 1,101,651[1] Settlement Class Members, <u>zero</u> objected, and only 11 requested to be excluded.[2]  As of January 9, 2018, 89,827 class members (or approximately 8.15%) filed claims, and that number will continue to grow as Settlement Class Members have until March 19, 2018 to file claims. Thus, the Court should have no hesitation in granting final approval to the unopposed Settlement.

The Settlement creates the largest ever total dollar settlement fund in a PPPA case of $8.225 million.  That fund is non-reversionary and Class Counsel estimates that Settlement Class Members will receive *pro rata* cash payments of $50 (after payment of the costs of notice, administration, attorneys' fees, and incentive award is made from the fund).  The $8.225 million cash fund exceeds the amounts approved in the four prior PPPA class action settlements.  *See Halaburda v. Bauer Publishing Co, LP*, Case No. 2:12-cv-12831, ECF No. 68 (E.D. Mich. January 6, 2015) (granting final approval to a settlement that created a $775,000 cash fund); *Coulter-Owens v. Rodale, Inc.*, Case No. 1:14-cv-11284, ECF No. 54 (E.D. Mich. Sept. 29,

---

[1] The number of class members was initially estimated as approximately 1,104,383 persons. Defendant provided KCC with a list of 1,103,531 persons that resulted in a list containing 1,101,651 members of the Settlement Class after duplicates were removed.  *See* Declaration of Lana Lucchesi ("Lucchesi Decl.") ¶¶ 8-9.

[2] The deadline to object or opt-out of the Settlement was December 21, 2017.  *See* ECF No. 75 ¶¶ 16, 21.

1

2016) (granting final approval to a settlement that created a $4.5 million cash fund); *Kinder v. Meredith Corporation*, Case No. 1:14-cv-11284, ECF No. 72 (E.D. Mich. Oct. 5, 2015) (granting final approval to a settlement that created a $7.5 million cash fund); *Moeller v. American Media Inc.*, Case No. 5:16-cv-11367, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (granting final approval to a settlement that created a $7.6 million cash fund).

Moreover, when compared to approved settlements of cases alleging violations of similar privacy statutes – which typically offer no monetary relief to the class whatsoever – the fairness, reasonableness, and adequacy of the instant Settlement becomes even more apparent. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims with $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, ECF No. 256 (N.D. Cal. March 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (N.D. Cal. June 2, 2011) (approving $8.5 million *cy pres* settlement).

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Michigan's Preservation Of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." M.C.L. § 445.1712.  As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

2

To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

### B.   Plaintiff's Allegations

TMBI is an international media company that, directly and through its subsidiaries, publishes some of the most widely circulated magazines in the United States. *See* Plaintiff's Class Action Complaint, ECF No. 1 ["Compl."], ¶ 1 n.1. Plaintiff alleges that TMBI sells information related to its customers' magazine subscription histories and personal reading habits. *Id.* ¶¶ 1-5, 8, 43-49. To increase the value of such information, Plaintiff alleges that TMBI trades its customers' protected reading information with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. *Id.* ¶¶ 8, 43. Plaintiff further alleges that TMBI thereafter "enhances" its own customer profiles with this additional data (e.g., income levels, religion, age, race, political affiliation, travel habits, medical conditions, etc.), and then sells the enhanced information to other unrelated third parties for a profit. *Id.* ¶¶ 8-9, 44-45.

Plaintiff further alleges that no matter how consumers subscribe (i.e., via postcard, over the phone, on TMBI's websites, or through a subscription agent's website), TMBI's customers never provide consent to disclose information related to their magazine subscriptions to third parties. *Id.* ¶¶ 10, 46-47, 49. This is because – during the subscription process – Plaintiff claims that customers are not required to consent to any terms or policies informing them of TMBI's disclosure practices. *Id.* Likewise, even after subscribing, Plaintiff alleges that TMBI fails to notify customers that it will disclose their protected reading information to third parties. *Id.* Nonetheless, TMBI is in the business of disclosing all of their customers' protected reading information to various third parties, without any consent. *Id.* ¶¶ 8-10, 46-47, 49.

### C.    The Litigation History And Settlement Discussions

Plaintiff filed her class action lawsuit on March 10, 2016 in the United States District Court for the Southern District of New York.  Declaration of Joseph I. Marchese In Support Of Plaintiff's Motion For Final Approval Of Class Action Settlement ("Marchese Decl.") ¶ 3.  In response to the Complaint, on May 9, 2016, TMBI filed a letter requesting a premotion conference on a motion to dismiss under Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted.  *Id.* ¶ 4.  After a premotion conference at which permission to file was granted by the Court, on July 15, 2016, TMBI served a motion to dismiss under Rules 12(b)(1) and (b)(6).  *Id.* ¶¶ 5-7.  On August 10, 2016 Plaintiff opposed TMBI's motion to dismiss.  *Id.* ¶ 8.  On September 12, 2016, TMBI filed a reply in support of its motion to dismiss.  *Id.* ¶ 9.

On October 20, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and thereafter entered a scheduling Order.  *Id.* ¶ 11.  The Parties then conducted substantial written and document discovery on the merits of the case, and produced and reviewed thousands of pages of documents, and engaged in several meet and confer conferences, all while TMBI's motion to dismiss remained pending.  *Id.* ¶¶ 12-16.  The Parties each substantially completed their document productions by February 16, 2017.  *Id.* ¶ 17.

From the outset of the case, and including during the pendency of the motion to dismiss, the Parties engaged in direct communications and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  *Id.* ¶ 18.  Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before former U.S. Magistrate Judge Frank Maas (of the District Court for the Southern District of New York), who is a neutral affiliated with JAMS New York.  *Id.* ¶ 19-21.

On March 14, 2017, the Parties notified the Court by joint letter that they intended to mediate before Judge Maas. *Id.* ¶ 22. As a result, on March 16, 2017, the Court stayed all discovery deadlines and denied TMBI's motion to dismiss without prejudice pending resolution of the mediation, after which TMBI was given leave to re-file. *Id.* ¶ 23.

The mediation occurred on April 3, 2017 at JAMS's offices in New York and lasted approximately six hours. *Id.* ¶ 24. While the Parties engaged in good faith negotiations, which at all times were at arm's-length, they failed to reach an agreement that day. *Id.* Following the mediation session, the Parties worked further with Judge Maas and were able to reach an agreement with his help. *Id.* ¶ 25. The Parties then diligently prepared and executed a written settlement agreement. The Court granted preliminary approval to that Settlement on October 17, 2017. *See* ECF No. 75.

## TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement ("Agreement"), attached to the Marchese Declaration as Exhibit A, are briefly summarized as follows:

### A.  Class Definition

As part of preliminary approval, the Court provisionally certified a class for settlement purposes of: "all Persons with a Michigan street address who subscribed to a TMBI Publication to be delivered to a Michigan street address between March 10, 2010 and July 30, 2016." ECF No. 75 ¶ 9; Agreement ¶ 1.30.[3]

### B.  Monetary Relief

TMBI has established an $8.225 million non-reversionary Settlement Fund, from which

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion

after payment of notice and administrative expenses, attorneys' fees, and an incentive award to

the Class Representative.  Agreement ¶¶ 1.32, 2.1.  No portion of the Settlement Fund will revert

back.  *Id.* ¶ 2.1.  Individual cash payments are estimated to be approximately $50.

### C.   Release

In exchange for the relief described above, TMBI and each of its related and affiliated

entities as well as all "Released Parties" as defined in ¶ 1.26 of the Settlement will receive a full

release of all claims arising out of or related to TMBI's disclosure of its Michigan customers'

magazine subscription information.  *See id.* ¶¶ 1.25-1.27 for full release language.

### D.   Notice And Administration Expenses

TMBI has paid, and will continue to pay, all notice and administration expenses out of

the Settlement Fund.  *Id.* ¶¶ 1.28, 1.32.

### E.   Incentive Award And Attorneys' Fees And Expenses

In recognition for her efforts on behalf of the Settlement Class, TMBI has agreed that

Plaintiff Taylor may receive, subject to Court approval, an incentive award of $5,000 from the

Settlement Fund, as appropriate compensation for her time and effort serving as Class

Representative and as a party to the Action.  *Id.* ¶¶ 1.32, 8.3.  TMBI has also agreed that the

Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to

reimburse expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶¶ 1.32, 8.1.

These awards are subject to this Court's approval, which Plaintiff has moved for separately.  *See*

ECF No. 76.  That motion is unopposed.

## ARGUMENT

### I.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement

purposes of:  "all Persons with a Michigan street address who subscribed to a TMBI Publication

to be delivered to a Michigan street address between March 10, 2010 and July 30, 2016."  ECF

No. 75 ¶ 9 (the "Settlement Class").

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the

prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires

that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are

questions of law or fact common to the class; (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3)

requires the Court to find that:

> questions of law or fact common to class members predominate
> over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and
> efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive

construction, and courts are to adopt a standard of flexibility" in evaluating class certification.

*Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

On October 17, 2017, the Court provisionally certified the Settlement Class.  The  Court

should now grant final certification because the Settlement Class meets all of the requirements of

Rule 23(a) and Rule 23(b)(3).  *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich.

2015) (granting plaintiff's motion for class certification of a PPPA claim against another

magazine publisher).

### A.    Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  For purposes of Rule 23(a)(1), "[i]mpracticable does

not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[N]umerosity is

presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Settlement Class easily satisfies Rule 23's numerosity requirement. According to Defendant's records, the Settlement Class is comprised of approximately 1,101,651 Michigan residents who purchased a TBMI magazine subscription between March 10, 2010 and July 30, 2016. Marchese Decl. ¶ 26. There, is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

### B.   Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement is met "if plaintiffs' grievances share a common question of law or of fact." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). The disputed issue of law or fact must "occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class." *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995) (internal quotations omitted). "[A] single common issue of law will satisfy the commonality requirement." *Michalow v. E. Coast Restoration & Consulting Corp.*, 2011 WL 6942023, at *3 (E.D.N.Y. Nov. 17, 2011); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999). A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims." *Monaco*, 187 F.R.D. at 61 (internal quotations omitted). A court may find a common issue of law even if there is "'some factual variation among class members' specific grievances.'" *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (quoting *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998)).

Here, Plaintiff alleges that the common contention on which the claims of all Class Members depends is that Defendant disclosed each of its customers' protected personal reading information to third parties in violation of the PPPA.  Plaintiff contends that determination of the truth or falsity of this contention can be made on a class wide basis and will resolve an issue – the key issue in the case – central to each class member's claims at once.

Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a PPPA claim.  Numerous courts considering settlement classes in the context of PPPA claims have agreed.  *See, e.g.*, *Moeller v. American Media Inc.*, Case No. 5:16-cv-11367, ECF No. 42 (E.D. Mich. Sept. 28, 2017); *Kinder v. Meredith Corp.*, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016); *Halaburda v. Bauer Publishing Co, LP*, Case No. 2:12-cv-12831, ECF No. 68 (E.D. Mich. January 6, 2015).  Moreover, the only court to consider a contested motion for class certification under the PPPA certificated the class.  *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 532–534 (E.D. Mich. 2015) (finding PPPA litigation against another magazine publisher was "driven by issues that are common to the entire putative class").

Several federal courts have similarly held that cases like this one – in which defendants are accused of uniformly disclosing information protected by a privacy statute – raise common issues of fact or law.  *See, e.g., Parker v. Time Warner Entertainment Co*., 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question – whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice"); *Supnick v. Amazon.com, Inc*., 2000 WL 1603820, at *1 (W.D. Wash. May 18, 2000) (finding commonality established where the defendants engaged in common

course of conduct toward every member of proposed class: disclosing their personal information without consent).

Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

### C.   Typicality

Rule 23(a)(3) requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux*, 987 F.2d at 936.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Id.* at 936-37; *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) (stating that denial of class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle … would destroy much of the utility of Rule 23").

Here, Plaintiff alleges that Defendant's disclosure of her subscription is not a one-off situation unique to her, but rather, part of Defendant's alleged business of disclosing its customers' subscription information to third parties without consent.  Compl. ¶¶ 1-5, 8-9, 43-49. It is Plaintiff's contention that no matter the person – whether it be Plaintiff or other members of the Settlement Class  – the disclosures are alleged to be made in the exact same manner and for the exact same purpose.  And, because Plaintiff alleges that such conduct violates the PPPA, which provides identical statutory damages to all members of the Settlement Class, her claims

are typical of the other Settlement Class Members.  Accordingly, by pursuing her own claims in

this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality

is therefore satisfied.  *See, e.g., Coulter-Owens*, 308 F.R.D. at 534–35; *Ebin v. Kangadis Food

Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (Rakoff, J.) (holding that the typicality

requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out

of the same course of conduct by the defendant and [were] based on the same legal theories"); *In

re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-406 (S.D.N.Y. 2015) (Briccetti, J.) (same).

### D.   Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the

interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Generally, adequacy of representation entails

inquiry as to whether:  1) plaintiff's interests are antagonistic to the interest of other members of

the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the

litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Both of these factors are met here.

In this case, Plaintiff – like each and every one of the Settlement Class Members – is a

Michigan customer that purchased a magazine subscription from Defendant and then allegedly

had her subscription information disclosed to third parties without consent.  Compl. ¶¶ 11, 43-49.

Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the

statutory damages to which they are entitled under the PPPA.  As such, Plaintiff does not have

any interest antagonistic to those of the proposed Settlement Class and her pursuit of this

litigation should be clear evidence of that.

Likewise, Class Counsel – Bursor & Fisher, P.A. – has extensive experience in litigating

class actions of similar size, scope, and complexity to the instant action.  Marchese Decl. ¶¶ 34-

35.  Class Counsel regularly engages in major complex litigation involving consumer privacy,

including recent and ongoing PPPA cases, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see* Marchese Decl. Ex. B *(*Firm Resume of Bursor & Fisher, P.A.); *Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Case No. 11-cv-03350, ECF No. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

Accordingly, since Plaintiff and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.     Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are

subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).  The essential inquiry is whether "liability can be determined on a classwide basis, even when there are some individualized damage issues." *Id.* at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

In this case, there allegedly was a common course of conduct engaged in by Defendant. In these circumstances, courts find, particularly for purposes of settlement that there is predominance of common questions over individual issues.  *See Moeller v. American Media, Inc.*, Case No. 5:16-cv-11367, ECF No. 42 (E.D. Mich. Sept. 28, 2017); *Kinder v. Meredith Corp.*, 2016 WL 454441, at *2 (E.D. Mich. Feb. 5, 2016); *see also In re Prudential Insur. Sales Practices Litig.*, 962 F.Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

### 2.      A Class Action Is A Superior Mechanism

Rule 23(b)(3) also requires that the class action be "superior to other available methods for fair and efficient adjudication of the litigation."  Fed. R. Civ. P. 23(b)(3).[4]  "Courts have found that the superiority requirement is satisfied where[] '[t]he potential class members are both significant in number and geographically dispersed[,] [and] [t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.'"  *Yang v. Focus Media Holding Ltd.*,

---

[4] Whether the case would be manageable as a class action at trial is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

2014 WL 4401280, at *13-14 (S.D.N.Y. Sept. 4, 2014) (quoting *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001)).  "Class adjudication … is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually."  *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013).

Class treatment here will facilitate the favorable resolution of all Settlement Class Members' claims.  Given that there are approximately 1,101,651 Settlement Class Members, the class device is the most efficient and fair means of adjudicating these claims. "Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the time and other resources to bring their claims individually."  *Beckman v. Keybank, N.A.*, 2013 WL 1803736, at *3 (S.D.N.Y. Apr. 29, 2013); *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (same).  Moreover, Plaintiff is unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations.  Therefore, a class action is the superior method of adjudicating the Settlement Class Members' claims.

## II.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the

14

settlement, including the nature of the action, terms of the settlement, and class members'

options. *See* Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the

prospective members of the class of the terms of the proposed settlement and of the options that

are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

Moreover, "[i]t is clear that for due process to be satisfied, not every class member need

receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform

persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41,

44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The

Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the

class. *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and

Plain Language Guide* 3 (2010). The notice plan here easily meets these standards, as it

provided direct notice via a postcard or email to 91.37% of the Settlement Class. *See* Lucchesi

Decl. ¶ 14.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it

met the requirements of Rule 23 and Due Process. *See* ECF No. 75 ¶ 12. The Plan has now

been fully carried out by professional settlement administrator KCC. Pursuant to the Settlement,

Defendant provided KCC with a list of 1,103,531 available names, addresses and emails of

potential Settlement Class Members. *See* Lucchesi Decl. ¶ 8. After KCC removed duplicates,

the Class List contained 1,101,651 potential members. *See id.* ¶ 9. KCC successfully delivered

the Court-Approved notice via email to 281,574 class members and via postcard to 758,386 class

members. *See id.* ¶¶ 10-13. Accordingly, the Court-approved notice successfully reached

15

91.37% of the Settlement Class directly.  *See id.* ¶ 14.[5]  These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees; and see deadlines and answers to frequently asked questions.  *See id.* ¶ 16.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of Due Process and Rule 23 are easily met.

**III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT**

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).  To determine whether to approve a settlement, "'[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits.'"  *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013) (quoting *Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *4 (S.D.N.Y. Dec. 13, 2011)).  "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the

_____

[5] KCC also notified the appropriate state and federal officials pursuant to CAFA.  *See* Lucchesi Decl. ¶¶ 5-7.

compromise of class actions.  *Id.* at 117 (internal quotations omitted).  If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig*., 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### A.    The Proposed Settlement Is Procedurally Fair

The circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair.  Courts examining the procedural fairness of a settlement do so "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves."  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks omitted).

The Settlement was reached only after a six-hour mediation session before former U.S. Magistrate Judge Frank Maas (of the District Court for the Southern District of New York), who is a neutral affiliated with JAMS New York, and only after continued discussions through Judge Maas over the following weeks.  And the negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients.  Moreover, the Settlement was reached after approximately 12 months of litigation and was informed by the exchange of significant information throughout the discovery and settlement process.  *See* Marchese Decl. ¶¶ 3-17 (summary of litigation); *id.* ¶¶ 18-25 (summary of negotiations).  In such situations, courts, including the Second Circuit, adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for court approval."  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002); *see also McReynolds v. Richards-Cantave*,

588 F.3d 790, 803 (2d Cir. 2009) ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.") (alteration in original) (citation and internal quotation marks omitted).

**B.      The Proposed Settlement Is Substantively Fair**

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* at *4 (quoting *Grinnell*, 495 F.2d at 463) (alteration in original). However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances." *Id.* Here, the *Grinnell* factors weigh in favor of final approval.

1.      **Litigation Through Trial Would Be Complex, Costly, And Long** (*Grinnell* **Factor 1**)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception. As discussed above, the Parties have engaged in extensive document discovery. The next steps in the litigation would have been resolution by the Court of TMBI's Motion to Dismiss, as well as depositions of the Parties, extensive third-party discovery, and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court, and creates risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. More specifically, Plaintiffs are aware that Defendant would continue to assert a number of defenses on the merits, including that the PPPA neither prohibits the disclosure of the magazine subscriptions information at issue (because the recipients of the disclosures are its agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute. *See Coulter-Owens v. Time Inc.*, 2017 WL 2731309, at *6 (6th Cir. June 26, 2017) (holding under the facts of that case that subscribers who purchased their magazine subscriptions through third-party online subscription

agents did not purchase "at retail," as is required by the PPPA).[6]  Defendant will also continue to

challenge Plaintiff's standing, and the constitutionality of the PPPA, as well as its applicability to

magazines in particular and the magazine publishing industry in general.  Looking beyond trial,

Plaintiff is also keenly aware of the fact that Defendant could appeal the merits of any adverse

decision, and that in light of the statutory damages in play it would attempt to argue – in both the

trial and appellate courts – for a reduction of damages based on due process concerns.

Against that backdrop of uncertainty, the benefits of the Settlement are obvious and

unmistakable:  it creates the largest total dollar settlement fund ever in a PPPA case and delivers

immediate cash relief to the Settlement Class Members years earlier than if the case proceeded to

judgement through trial and/or appeals.  Specifically, the $8.225 million settlement fund for the

benefit of approximately 1,101,651 potential class members will provide an estimated $50 cash

*pro rata* payment.  The reasonableness of the anticipated $50 *pro rata* payments becomes all the

more apparent when looking at the relief afforded in the typical privacy settlement, where classes

tend to be enormous, but individual class members receive only *cy pres* relief without any

individual payments.  *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012)

(affirming $9.5 million settlement providing *cy pres* payment as sole monetary relief in case

where statutory damages of up to $10,000 per claim were available in class of millions), *cert.*

*denied* 134 U.S. 8 (Nov. 4, 2013); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5

(N.D. Cal. June 2, 2011) (approving $8.5 settlement providing *cy pres* payment as sole monetary

relief in case where statutory damages of up to $10,000 per claim were available in a class of

millions); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013)

---

[6] The Settlement in this case was reached approximately 2 months prior to the Sixth Circuit's opinion, which certainly would have altered the course of the litigation and may have even ultimately barred recovery to members of the Settlement Class who subscribed to Defendant's publications through third parties.

(approving $9 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of $2,500 per claim were available to class of millions).

Consequently, this *Grinnell* factor plainly weighs in favor of final approval of the Settlement.

### 2.    The Reaction Of The Class Is Overwhelmingly Positive (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 75 ¶¶ 12-14), and direct notice reached approximately 91.37% of the Settlement Class. *See* Marchese Decl. ¶ 32; Lucchesi Decl. ¶¶ 5-16. As of January 9, 2018, over 89,000 people have already filed valid claims, zero objected to the Settlement, and only 11 opted-out (a mere .000009% of the Settlement Class). *See* Lucchesi Decl. ¶¶ 17-19. This exceptional participation rate and lack of objections from the Settlement Class leave no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("'The fact that the vast

21

majority of class members neither objected nor opted out is a strong indication' of fairness.") (quoting *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)).

Consequently, this *Grinnell* factor plainly weighs in favor of final approval of the Settlement.

### 3.  Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

As discussed above, the Parties have conducted substantial discovery, including document production and interrogatories.  *See supra*; *see also* Marchese Decl. ¶¶ 10-17.  The documents included Plaintiff's magazine subscription records, records of transmissions of Plaintiff's customer information to multiple third party companies, and Defendant's purported notices of the disclosures.  Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

 "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).  The discovery conducted in this matter clearly traverses this hurdle.  This *Grinnell* factor thus also weighs in favor of final approval.

22

    **4.**     **The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (*Grinnell* Factors 4, 5, And 6)**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at *5. "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc*., 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id*.

Although Plaintiff's case is strong, it is not without risk. Defendant has filed a Motion to Dismiss, and has made it clear that it will both move for summary judgment on various issues and vigorously contest the certification of a litigation class. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian And German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the Class face risks in overcoming Defendant's summary judgment motion and certifying a class. Moreover, further litigation will only delay relief the Class Members. The Settlement alleviates these risks, and provides a substantial benefit to the Class in a timely fashion.

The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Class for litigation purposes and the Parties anticipate that such a determination would be reached only after decision on Defendant's Motion to Dismiss, after Phase I dispositive motions are briefed and decided, after Phase II discovery is completed, and after exhaustive class certification briefing is filed. Defendant would likely argue that individual questions preclude class certification. Defendant would also likely argue that a class action is

not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay as well.

Accordingly, the fourth, fifth, and sixth *Grinnel* factors weigh in favor of final approval of the Settlement.

### 5.    Defendant Probably Could Not Withstand A Greater Judgment (*Grinnell* Factor 7)

Defendant probably could not withstand a much greater judgment.  Defendant has undergone two bankruptcy proceedings in the past ten years, and has limited insurance coverage available.  *See In re Reader's Digest Media Group, Inc.*, Case No. 13-bk-22253 (Bankr. S.D.N.Y. 2013); *In re Reader's Digest Media Group, Inc.*, Case No. 09-bk-23563 (Bankr. S.D.N.Y. 2009).  Thus, this factor weighs in favor of final approval.

### 6.    The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation omitted).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those

originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, Class Counsel projects that each Class Member is expected to receive $50 in cash. In addition, Defendant has agreed to pay the costs of notice and administration as well as reasonable attorneys' fees and costs for Class Counsel from the all-in fund established by the Settlement.  Agreement ¶¶ 1.32, 8.1.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  This is especially true given Defendant's recent bankruptcy filings.  *See supra* Section III.B.5.  Moreover, when Settlement assures immediate payment of substantial amounts to Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of final approval.

* * *

All of the *Grinnell* factors weigh in favor of approval, and the settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)).  The Court should therefore grant final approval.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement, and enter the Final Approval Order in the form submitted herewith.

Dated:  January 11, 2018

Respectfully submitted,


By:  */s/ Joseph I. Marchese*
         Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
            jmarchese@bursor.com
            pfraietta@bursor.com

*Class Counsel*