```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------------x

 3  SHANNON TAYLOR,

 4              Plaintiff,

 5         -against-                          16 CV 1812 (KMK)

 6  TRUSTED MEDIA BRANDS, INC.,

 7              Defendant.

 8  ------------------------------------x

 9
                                    United States Courthouse
10                                  White Plains, New York

11                                  January 31, 2018

12
    B e f o r e:
13
                      HONORABLE KENNETH M. KARAS,
14                              District Court Judge

15  A P P E A R A N C E S:

16  BURSOR & FISHER, PA
              Attorneys for Plaintiff
17            888 Seventh Avenue
              New York, New York 10019
18  BY:  JOSEPH MARCHESE
         PHILIP FRAIETTA
19
    DENTONS US LLP
20            Attorneys for Defendant
              233 South Wacker Drive, Suite 7800
21            Chicago, Illinois 60601
    BY:  NATALIE SPEARS
22       SANDRA HAUSER

23

24

25

                 Angela O'Donnell, RPR, 914-390-4025
```

1              THE CLERK:  Honorable Kenneth M. Karas, presiding.
2              Case number 16CV1812.  *Shannon Taylor versus*
3     *Custom Video Brands, Inc.*
4              Counsel, please state your appearances for the
5     record.
6              MR. MARCHESE:  Good morning, everyone.
7              Joseph Marchese, Bursor & Fisher, for the
8     settlement class.  And I am joined by my colleague today,
9     Phil Fraietta.
10             THE COURT:  Good morning to you both.
11             MS. SPEARS:  Good morning, your Honor.
12             Natalie Spears for defendant, Trusted Media.
13             MS. HAUSER:  Sandra Hauser, also for Trusted
14    Media.
15             THE COURT:  Good morning to you both.  Please be
16    seated.
17             All right.  So we're here on the application for
18    final approval of the class settlement.  I've read the
19    papers.
20             Is there anything that anybody wants to add?
21             MR. MARCHESE:  Your Honor, I've prepared some
22    somewhat lengthy remarks and, as you know, there are no
23    objections to the settlement or to our attorneys' fees
24    requests.  So I'm either prepared to present the remarks
25    from soup to nuts, or just take a cue from your Honor, if

```
 1   you have any questions.
 2             THE COURT:  I don't have any questions.  I feel
 3   terrible that you've done all this work.  So if you want to
 4   say to the client that you were brilliant in delivering
 5   these remarks, I'm good with that.
 6             MR. MARCHESE:  You know, for now, your Honor, I
 7   think I'll just maybe reserve any remarks that I have.  If I
 8   hear something that kind of pops up --
 9             THE COURT:  Okay.
10             MR. MARCHESE:  -- I may jump up.
11             THE COURT:  Okay.  Thank you.
12             Do you want to give a speech?
13             MS. SPEARS:  No, thank you.  Thank you for the
14   Court's time, and just take the opportunity to do that, but
15   other than that, we support approval of the class
16   settlement.
17             THE COURT:  Okay.  Well, as I said, I've reviewed
18   the papers, and so what I'm going to do is rather than have
19   you all wait for me to draft an opinion, I'm just going to
20   let you know how I come out on this now.
21             The basic terms of the settlement and the request
22   for fees and the incentive award come down to defendant
23   establishing a fund, a non-revisionary settlement fund in
24   the amount of $8,225,000.  That fund is going to pay all the
25   claims to the class members, the incentive award to the
```

1    plaintiff, the notice and administration expenses, as well
2    as the attorneys' fees.
3             The class members who submitted the claim form are
4    going to receive a pro rata award estimated to be about $50.
5    In exchange for the settlement, the defendant and each of
6    its related and affiliate entities are going to receive a
7    full release of all claims, "arising out of any facts,
8    transactions, events, matters, occurrences, acts,
9    disclosures, statements, representations, omissions or
10   failure to act regarding the alleged disclosure of the
11   settlement class members, Michigan subscriber information,
12   including, but not limited to all claims that were brought
13   or could have been brought in the action relating to any and
14   all releasing parties."
15            And just parenthetically, the law is well-settled
16   in this circuit, as well as other courts, that class action
17   releases may include claims not presented, and even those
18   which could not have been presented, as long as the released
19   conduct arises out of the identical factual predicate as the
20   settled conduct.  That was noted by the *Second Circuit in*
21   *Wal-Mart Stores Inc. versus Visa USA*, 396 F.3d 96, 107.
22   That principle applies here.
23            Class counsel seeks attorneys' fees of 33.33
24   percent of the settlement fund, which equates to
25   $2,741,392.50, and then the class representative, Taylor,

1   seeks a $5,000 incentive award.
2               Now, before certification, class certification is
3   proper for any purpose, whether it's settlement or
4   otherwise, a court has to make sure that the Rule 23(a) and
5   (b) requirements have been met.  That's what the circuit has
6   instructed in, among other cases, in *Denney versus Deutsche*
7   *Bank AG*, 443 F.3d, 253, 270.
8               Obviously, the settlement only class has to meet
9   all the requirements of Rule 23 with the exception of the
10  requirement dealing with the trial.  So you don't have to
11  worry about the manageability of the trial.  But otherwise,
12  the Rule 23 requirements are not to be watered down just
13  because a settlement might be fair and/or equitable.  That's
14  *Denney* at page 270.
15              Now, under Rule 23(a), plaintiff seeking
16  certification have to meet four requirements; numerosity,
17  commonality, typicality and adequacy of representation.
18              In terms of numerosity, the Second Circuit has
19  said its presumed at a level of at least 40 members, that's
20  from *Consolidated Rail Corp. versus Town of Hyde Park*, 47
21  F.3d, 473, 483.  Here, the representation is that the class
22  consists of roughly 1.1 million or so individuals.  So I
23  think we're comfortably north of 40.
24              In terms of commonality, that requires the
25  questions of fact and law are common to the class.  That's

1    from the *Meredith Corp.*, case.  *That's Meredith Corp. versus
2    SESAC, LLC*, 87 F.Supp. 3d, 650, 659.  The courts in the
3    Second Circuit haven't had the pleasure of addressing
4    commonality in the context of claims under their PPPA.  But,
5    as class counsel points out, there are cases in the Eastern
6    District of Michigan that have approved settlement classes
7    for claims brought under this provision, among others is
8    *Kinder versus Meredith Corp.*, 2016 WL 454441, *1.  That's a
9    case from 2016, February of 2016, and there are others that
10   all say the same thing.
11              So the Court finds here that the question common
12   to all class members is whether defendants disclose each of
13   the customers' protected personal reading information to
14   third parties in violation of PPPA, and so commonality is,
15   therefore, satisfied.  For the same reason, typicality is
16   satisfied.  And in terms of adequacy of representation, this
17   requires the Court to inquire as to whether the plaintiffs'
18   interests are antagonistic to the interests of other members
19   of the class, and also that the plaintiffs' attorneys are
20   qualified, experienced and able to conduct the litigation.
21   So said the Second Circuit in *Baffa versus Donaldson, Lufkin
22   & Jenrette Security Corp.*, 222 F.3d, 52, 60.
23              There's nothing in the record to indicate that the
24   plaintiff is incapable or somehow ill-suited to represent
25   the other class members, and as for class counsel, it has

1   represented and, indeed, has substantiated that it has
2   extensive experience in litigating class actions of similar
3   size and scope, as well as complexity, including other PPPA
4   cases.  And counsel has been appointed as lead counsel in
5   cases throughout the country.  So I'm comfortable in
6   reaching the conclusion that class counsel's qualified, and
7   that's without hearing your brilliant statement.
8          Now, in addition to the express requirements of
9   Rule 23(a), there is an ascertainability requirement which
10  requires that a class be definite in order to be certified.
11  That's from the *MTBE Products Liability Litigation,* 209
12  F.R.D. 323, 336.  The touchtone of ascertainability is
13  whether the class is sufficiently definite so that it is
14  administratively feasible for the Court to determine whether
15  a particular individual is a member.  That's from *Brecher*
16  *versus Republic of Argentina*, 806 F.3d, 22, 24.
17         Here the class is defined as, "all persons with a
18  Michigan street address who subscribe to a TMBI publication
19  to be delivered to a Michigan street address, between
20  March 10, 2010 and July 30, 2016.  As proposed, this class
21  satisfies the ascertainability requirement as it is limited
22  to Michigan residents who subscribed to the aforementioned
23  publications between the prescribed time period.  As such,
24  these are sufficiently definite requirements that it is
25  administratively feasible for the Court to determine whether

1   or not a particular individual is a member.
2           Now, turning to Rule 23(b)(3), a class has to meet
3   two additional requirements.  Common questions have to
4   predominate over questions affecting only individual members
5   and a class resolution must be superior to other available
6   methods of the fair and efficient adjudication of the
7   controversy.  That's from the Supreme Court Decision in
8   *Amchem Products*, 521 U.S. 591, 615.  In terms of
9   predominance, that asks whether the proposed classes are
10  sufficiently cohesive to warrant adjudication by
11  representation.  That's from the Supreme Court's decision in
12  *Tyson Foods*, 136 Supreme Court Reporter, 1036, 1045.
13          And again, there is case law that applies these
14  principles directly to PPPA claims, and they've been held to
15  satisfy the predominance requirement.  So the aforementioned
16  *Kinder* case, as well as *Coulter-Owens versus Time, Inc*., 308
17  F.R.D. 524, 536.  And here it's clear to the Court that
18  common questions regarding whether defendant's practices
19  violated Michigan law will indeed predominate over
20  individual questions and so therefore the requirement is
21  satisfied.
22          Superiority requires a showing that the class
23  action is superior to other methods available for the fair
24  and efficient adjudication of the controversy.  I don't
25  think I'm going to break a sweat saying that this would be

1   tough to do if we had to do a million cases.  So I think the
2   superiority requirement is easily satisfied.  So, therefore,
3   the Court finds that the proposed class may be certified for
4   settlement purposes.
5          In terms of the fairness of the settlement, a
6   court can approve a settlement only if the settlement is
7   "fair, adequate and reasonable, and not a product of
8   collusion."  That's from *Wal-Mart Stores* at page 116.
9          In determining fairness, the Court is to look at
10  both the settlement's terms and the negotiating process that
11  led to the settlement.  And indeed, there's a presumption of
12  fairness, adequacy and reasonableness attached to a class
13  settlement reached in arm's-length negotiations between
14  experienced, capable counsel after meaningful discovery.
15  All of that from *Wal-Mart Stores*.  So that does include
16  examining, among other things, the negotiating process that
17  led to the settlement.
18         In terms of this point, the procedural fairness,
19  the Court seeks to ensure that the settlement resulted from
20  an arm's-length, good-faith negotiation between experienced
21  and skilled litigators, said the Second Circuit in *Charron*
22  *versus Wiener*, 731 F.3d, 241, 247.  This is typically found
23  where there has been sufficient discovery, for example, to
24  inform the negotiations where the parties are represented by
25  experienced counsel in litigating these types of claims, and

1   where there is significant evidence demonstrating the
2   settlement was the product of, as I said, prolonged
3   arm's-length negotiation, and it certainly helps that there
4   is the assistance of a respected mediator.
5             Here the settlement was reached after
6   approximately 12 months of litigation.  There was, in fact,
7   a significant exchange of information through the discovery
8   process.  This included, among other things, document
9   production, interrogatories -- I've already commented on the
10  quality of counsel.  So there's no question there, and the
11  settlement was reached after mediation session with Judge
12  Maas, who is awesome, I'll just say that for the record.  So
13  there's more than enough reason to find that this settlement
14  satisfies the procedural fairness requirement.
15            In terms of substantive fairness, we go with the
16  *Grinnell* factors.  I'm not going to read all of them here,
17  you all know them.
18            Starting with complexity, expense and likely
19  duration of litigation.  Obviously, most class actions are
20  inherently complex.  Given the scope of the litigation here,
21  that factor is easily satisfied.
22            Reaction of the settlement class, some courts have
23  said this is perhaps the most significant factor.  One of
24  those is *Raniere versus CitiGroup, Inc.*, 310 F.R.D. 211,
25  218.

1      Obviously, a favorable response demonstrates that
2 the class approves settlement.  Here that's overwhelmingly
3 satisfied as no class member has objected to the settlement.
4 So that weighs in favor of approval.
5      Next is the stage of the proceedings and the
6 amount of discovery completed.  I've already talked about
7 that.  This case has had to go through some pretty
8 substantial document exchanges and interrogatories and a
9 litigation had been going on for some time before there was
10 settlement.  So that included in the document production,
11 things like subscription records, records of transmissions
12 of customer information, there were third parties involved,
13 there were notices of disclosures.  And, yes, it's true
14 there were not depositions, but there were interrogatories.
15 So this factor weighs in favor of approval.
16      The risk of establishing liability and damages.
17 These are the fourth and fifth factors.  In analyzing the
18 risk to plaintiffs in establishing liability, the Court
19 doesn't need to decide the merits of the case.  That's *In Re*
20 *Hi-Crush Partners, LP Securities Litigation*, 2014 WL
21 7323417, *8, the Court is only required to weigh the
22 likelihood of success on the merits against the relief
23 provided by the settlement.  And the courts often approve
24 settlements where the plaintiffs were to face significant
25 legal and factual obstacles to establish liability.

1       Here the defendant has denied and continues to
2  deny liability in this action.  Thus, there is no certainty
3  that the claims would succeed at trial if the case were to
4  go to trial.  And indeed, plaintiffs acknowledge that the
5  case, while it's strong, is not without its risks, which,
6  among other things, could have included a summary judgment
7  motion.  This factor cuts in favor of settlement, because
8  the settlement provides a tangible, certain substantial
9  relief to the class now without subjecting to the class to
10 the risk, complexity, duration and expense of continued
11 litigation.  That's all from *Hi-Crush Partners*, *9.
12      The sixth factor asks about the risks maintaining
13 class action status through the trial.  Indeed, there could
14 have been challenges from the defense about the class
15 certification.  So this factor is, at worst, neutral, and,
16 at best, tips the scales in favor of approval.
17      Seventh factor asks about the ability of defendant
18 to withstand a greater judgment.  Here, there is a question
19 as to whether or not defendant could withstand a much
20 greater judgment because defendant has undergone two
21 bankruptcy proceedings in the preceding ten years.  So this
22 factor cuts in favor of approval.
23      The eighth and ninth factors ask about the range
24 of reasonableness of the settlement in light of the best
25 possible recovery and in light of all the attendant risks of

1   litigation.
2           You think someday somebody is going to cut these
3   nine down to five factors?  You should put that in your
4   speech.
5           MS. SPEARS:  We support that as well.
6           THE COURT:  Right?
7           So under these factors, the courts need only find
8   that the settlement falls within a range of reasonableness.
9   That's from *Meredith Corp*. at 666.  So the adequacy of the
10  amount achieved in settlement is not to be judged in
11  comparison with the possible recovery in best of all
12  possible world, but rather in light of strength and
13  weaknesses of the plaintiffs' case.  Same case, same page.
14          So here, as I mentioned already, the settlement
15  here is an optimal result because there is a certain
16  recovery, this was a result that was achieved after
17  substantial exchange of information with the assistance of
18  Judge Maas.  Given especially defendant's bankruptcy files,
19  the Court is persuaded that the settlement fits safely
20  within the range of what is reasonable, given all the
21  circumstances in this case.
22          So next up is the adequacy of the class notice;
23  23(b) requires the courts must direct to class members the
24  best notice that is practicable under the circumstances,
25  including individual notice to all members who can be

1  identified through reasonable effort.
2          So under both the federal rule and due process
3  considerations, the adequacy of notice to class members
4  depends on the particular circumstances of each case.
5          Conformity with Rule 23(c) requirements, however,
6  typically fulfills the due process mandate, said the Supreme
7  Court back in 1974, *Eisen versus Carlisle and Jacquelin*, 417
8  U.S. 156, 173.
9          Now, here actual notice was attempted on all class
10 members and actually given to 91.37 percent of the class,
11 which is 1,006,569 class members.  The identities and
12 addresses of the class members were obtained by referencing
13 defendant's records.  And, as I said, actual notice was
14 mailed to these individuals either by postcard or email by
15 the claims administrator.
16         Notice to the remaining class members was returned
17 as undeliverable and alternative email or post email
18 addresses were not available.
19         So given this record, the Court finds that this
20 notice procedure satisfies Rule 23 and due process.  Indeed,
21 the courts have said that for due process to be satisfied,
22 not every class member has to receive actual notice, as long
23 as counsel "acted reasonably in selecting means likely to
24 inform persons affected."  And I'll commit the mortal sin of
25 citing a summary order, that's from the Second Circuit's

1    order in *Adelphia Communications Corp. Security and*
2    *Derivative Litigation*, 271 Fed. App. 41, 44.
3               So that requirement has been satisfied.
4               In terms of the incentive award, these are common
5    in class actions.  They serve, obviously, to compensate
6    plaintiffs for their time and effort assisting in the
7    prosecution of the litigation, the risk incurred by becoming
8    and continuing as a litigant, and any of the burdens that
9    are sustained by the plaintiff.
10              Here class representative Taylor has requested an
11   incentive award of $5,000.  What is said about Ms. Taylor is
12   she was critical to the ultimate success of the case, having
13   spent approximately 30 hours protecting the interests of the
14   class, including investigating the claims, detailing
15   magazine subscription histories, aiding in the drafting of
16   the complaint and also assisting in the discovery process.
17              In light of these contributions, which are not
18   disputed, the Court finds that the service award is
19   appropriate.
20              Then we come to the issue of attorneys' fees,
21   which I always scrub.  Here, as I said, the request is for
22   one-third of the common fund, which is just a little more
23   than $2.7 million.  It includes, by the way, the
24   unreimbursed litigation expenses of $6,675.53, which is a
25   legitimate thing to seek.

1    Now, in assessing the attorneys' fees, the Second
2    Circuit says that we're supposed to use one of two methods.
3    There's the percentage of the fund method; 33 percent is
4    typical, the *Raniere* case held that at page 216, as well
5    220, 222, *DeLeon versus Wells Fargo Bank*, 2015 WL, 2255394,
6    and so that, obviously, is to take into consideration the
7    attorneys' fees in proportion to the settlement fund as a
8    whole.
9    The other method is the lodestar method, where the
10   Court is to scrutinize the fee petition to ascertain the
11   number of hours reasonably billed to the class and then
12   multiply that figure by the appropriate hourly rate.  That's
13   discussed in *Goldberger*.  But after computing the fee, the
14   Court may, in its discretion, increase the lodestar by
15   applying a multiplier based on other less objective factors
16   such as the risk of litigation and the performance of the
17   attorney.
18   Now, the lodestar method is not supposed to be
19   used for computing attorneys' fees.  In any event, we're
20   supposed to apply the *Goldberger* factor.
21   See, *Goldberger* has it down to six factors.
22   So starting with time and labor, here the time and
23   labor class counsel billed 502.6 hours.  That covered
24   everything from drafting the complaint to doing
25   investigation, discovery, meetings, conferences, review of

1    material and negotiating the settlement.
2             And there was a lot of legal research that had
3    done, too, because of the *Spokeo* decision.  So there is no
4    question that counsel have dedicated a meaningful amount of
5    time and labor to this case.
6             Next is the magnitude, complexity and risk of
7    litigation.  I've already talked about this at length with
8    respect to the Rule 23 issues.  The class is over a million
9    members.  It has its own complexity, both factually and
10   legally, and the risk of litigation was substantial for the
11   aforementioned reasons.  So this factor cuts in favor of the
12   request.
13            Next is the result achieved and the quality of
14   representation.  Obviously, the result achieved is a major
15   factor, and here the result is good for the plaintiffs.
16   It's a substantial fund, and especially given the risk of
17   litigation and given the defendants' financial history, the
18   result achieved here is commendable and, obviously, reflects
19   the high quality of representation.
20            Next is the requested fee in relation to the
21   settlement.  As I said, it's one-third.  That's typically
22   approved by other courts.
23            Public policy considerations.  Here the private
24   Attorney General role is something that does merit
25   compensation and this case is another example of that.

                    Angela O'Donnell, RPR, 914-390-4025

1    So applying the *Goldberger* factors, the Court
2 finds that the request for attorneys' fees and expenses is
3 reasonable.
4    I would note that using the billing hours and
5 billing rate, the lodestar calculation is substantially
6 less. Indeed, there's a pretty healthy multiplier here
7 about 11.7 times when looking at the one-third percentage.
8 But a high multiplier "should not result in penalizing the
9 plaintiffs' counsel for achieving an early settlement,
10 particularly whereas here the settlement amount was
11 substantial." That's a quote from *Beckman versus Keybank NA*
12 293 F.R.D. 467, 482.
13    So for the aforementioned reasons, the motion to
14 certify the class and approve the settlement is granted, as
15 well as the application for the attorneys' fees, expenses
16 and approval of the claims administrator, and also the
17 incentive award for Ms. Taylor.
18    Anything else?
19    MR. MARCHESE: I don't have anything.
20    Thank you, your Honor.
21    THE COURT: Anything else?
22    MR. MARCHESE: There was a proposer order.
23    THE COURT: Yes, it will be signed and docketed.
24 I promise.
25    MS. SPEARS: Order.

Angela O'Donnell, RPR, 914-390-4025

```
 1            THE COURT:  It would have been fun to try the
 2   case, but good for you all.
 3            MR. MARCHESE:  We have another one before you,
 4   your Honor.
 5            THE COURT:  There you go.  Hope springs eternal.
 6            All right, then I'll bid you a pleasant rest of
 7   the day.  Good to see you all.
 8            MS. SPEARS:  Thank you, your Honor.
 9            MR. MARCHESE:  Thank you.
10            (Proceeding concluded)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```